**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Pamela Jo CHANDLER,
Defendant-Appellant.**

No. 87-6253.

United States Court of Appeals,
Fifth Circuit.

Oct. 11, 1988.

Thomas S. Berg, Asst. Federal Public Defender, Roland E. Dahlin, II, Houston, Tex., for defendant-appellant.

John Grasty Crews, Asst. U.S. Atty., Brownsville, Tex., Tim Johnson, Paula C. Offenhauser, Asst. U.S. Attys., John Kyles, Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge,
BROWN and JOLLY, Circuit Judges.

CLARK, Chief Judge:

Pamela Jo Chandler was convicted, pursuant to 18 U.S.C. § 1005, of making a false entry in a bank record. She appeals from that conviction, alleging that there was no evidence that she committed the crime charged and that her conviction rested on, if anything, evidence of a different offense. Because we find that Chandler may have been convicted for a crime not charged, we reverse.

## I.

Pamela Jo Chandler was a bank teller at Interfirst Bank–Baytown in Baytown, Texas. As a part of her duties, Chandler was required to file a daily recapitulation sheet showing the amount of cash and other items in her teller drawer. On August 15, 1985, Chandler had entered on her "re-cap" sheet that her drawer contained $25,565.80 and placed the drawer in the bank's vault. Later in the month, bank officers uncovered cash losses from the bank's vault totalling $380,000. On September 5, while investigating this loss, the officers audited the teller drawer assigned to Chandler and found that it was $20,858.61 short. The audit revealed that the drawer contained only $4,707.19. There was no record of any proper withdrawals from the drawer during the period from August 15 to September 5. The audit also revealed a cash shortage in another teller's drawer of approximately $25,000. The bulk of the $380,000 loss, however, appeared to have been taken directly from the bank vault. Two other bank employees who worked in

the vault had daily access to all teller drawers stored there.

After the shortages were uncovered, the bank's chairman of the board, Paul Edwards, asked Chandler if she would be willing to discuss the shortages in her drawer. Chandler agreed to do so voluntarily and also permitted her car to be searched. During her meeting with Edwards, Chandler denied any knowledge of or involvement in the scheme to embezzle the $380,000 or the sum missing from her teller drawer. Chandler did admit she had taken small sums of money from her drawer at various other times during her two years as a bank teller and that she concealed the sums by raising the amount recorded as the total of loose coins in her re-cap sheet. The total of all of these amounts was approximately $500. Edwards wrote a statement containing Chandler's admissions, which she signed. Later, however, Chandler claimed that her statement as written was misleading. According to Chandler, she had not stolen $500. Rather, she had merely held a series of checks which totalled that amount for herself and other tellers for short periods of time before payday. She further contended that all of the $500 was repaid and correcting adjustments were made to her various daily re-cap sheets as the funds were repaid. It was conceded at trial that there was at that time a common, although unauthorized, practice among the bank tellers of holding small checks for each other in their cash drawers until payday, then covering the resulting temporary cash shortages by falsifying some part of the re-cap sheet.

Chandler was indicted for embezzling $20,858.61 and for making a false $25,565.80 entry in a bank record, her re-cap sheet, to cover the $20,858.61 theft, pursuant to 18 U.S.C. §§ 656 and 1005, respectively. Two bank employees who had access to the vault and the other teller who had a shortage were also charged in the same indictment for the embezzlement of the $380,000.

Chandler pled not guilty and went to trial solely on the two counts related to the

$20,858.61 shortfall. At the start of the trial, during voir dire and opening statement, the government focused on its claim that Chandler had embezzled $20,858.61 from her teller drawer and covered this theft by falsifying her re-cap sheet. During trial the government's strategy evolved to place increasing weight on Chandler's admission of "taking" $500.

During closing argument, the government argued, "If you have reason to believe that [Chandler's written statement] is sufficient to prove beyond a reasonable doubt in your collective mind that the defendant did knowingly and intentionally steal $500 from the bank, by whatever means, it will be sufficient basis for [a] finding of guilt [on the $20,858.61 embezzlement charge]...." Chandler's defense counsel objected to this part of the government's argument. In response to Chandler's objection, the district court admonished the jury "to consider the instructions presented to you. What either of the attorneys state is merely their interpretation of the instructions. You are to read the instructions and the indictment and the questions and proceed thereon based upon the written instructions you receive." The court had previously instructed the jury that the defendant was not on trial for any act or conduct or offense not alleged in the indictment. After this exchange, counsel for the government repeated its asserted theory that theft of $500 would support a conviction for embezzlement under the indictment.[1] On defense counsel's third objection to such comment, the judge simply overruled the objection.

The jury returned a verdict of not guilty on the embezzlement charge, but found the defendant guilty of making a false entry in a bank record. The district court sentenced Chandler to three years imprisonment, suspending all but six months and placing Chandler on four years probation.

Chandler appeals her conviction, asserting that there was no evidence that she committed the crime charged and that her conviction rested on, if on anything, evidence of a different offense. The record of the trial convinces us that the court's instructions were plain error because they permitted the jury to convict Chandler based on her admission regarding other false record entries instead of on proof of the $25,565.80 entry charged in the indictment to be false. This constitutes an unconstitutional constructive amendment of the indictment which requires reversal.

## II.

The Constitution of the United States guarantees that a criminal defendant will be tried only on charges presented in a grand jury indictment. U.S. Const. amend. V. Incident to this constitutional guarantee is the longstanding principle of our criminal justice system that the charges contained in an indictment may not be broadened or altered through amendment, except by the grand jury itself. *Stirone v. United States*, 361 U.S. 212, 215–17, 80 S.Ct. 270, 272–73, 4 L.Ed.2d 252 (1960); *Ex parte Bain*, 121 U.S. 1, 10, 7 S.Ct. 781, 786, 30 L.Ed. 849 (1887); *United States v. Young*, 730 F.2d 221, 223 (5th Cir.1984). Such amendments need not be explicit. An implied or constructive amendment also constitutes reversible error. *Stirone*, 361 U.S. at 217–18, 80 S.Ct. at 273–74, *Young*, 730 F.2d at 223.

Constructive amendments are reversible *per se*, as contrasted with varianc-

---

1. [Government Counsel]: Therefore, if you believe that [Chandler's written statement] is sufficient to prove in your collective minds that the defendant is guilty of the theft of $500, then she can be found guilty, if you believe collectively that the evidence shows—

[Chandler's Counsel]: Objection, Your Honor.... Again, the government is arguing a theory that is not presented in the indictment and asking the jury to convict on that theory.

The Court: Once again, ladies and gentlemen, this is only the government's position.

You will read the instructions and you will read the indictment and render your verdict thereupon based upon the evidence you've heard in the case.

[Government Counsel]: Thank you, Your Honor.... Don't go into the jury room and be confused by any variance that you might believe exists between the $500 figure and the 200—and the $20,000 figure because belief that the defendant stole money from the bank is sufficient basis for a finding of guilt.

es between the indictment and proof that are evaluated under the harmless error doctrine. *See Stirone*, 361 U.S. at 217–18, 80 S.Ct. at 273–74; *Young*, 730 F.2d at 223. "The accepted test is that a constructive amendment of the indictment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the crime charged." *Young*, 730 F.2d at 223 (citations omitted). The question we must decide is: was the jury permitted to convict the defendant upon a "set of facts distinctly different from that set forth in the indictment"? *Id.* at 223 (citations omitted). *See also Stirone*, 361 U.S. at 217–18, 80 S.Ct. at 273–74. In *Stirone*, the defendant was indicted for a Hobbs Act violation for obstructing an interstate shipment of sand. The evidence adduced and the instructions to the jury, however, allowed the jury to base a guilty verdict on a finding that the defendant had interferred with a shipment of steel. The Court held:

> [T]here are two essential elements of a Hobbs Act crime: interference with commerce, and extortion.... The charges that interstate commerce is affected is critical since the Federal Government's jurisdiction of this crime rests only on that influence. It follows that when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another
>
>    . . . .

*Stirone*, 361 U.S. at 218, 80 S.Ct. at 274.

▮ In today's case, the trial court permitted the government to argue that the jury could convict Chandler under the indictment charging her with embezzling $20,858.61 if the jury found that Chandler had taken smaller sums totalling $500 over a long period of time. When defense counsel objected, the court merely reminded the jury that counsel's argument was not evidence and cautioned the jury to recall the court's very general instructions not to convict for an offense not charged.

The difficulty for this approach is that limiting the evidence and arguments to the charges presented in the indictment is the duty of the court, not the jury. *See id.* at 217, 80 S.Ct. at 273. Merely instructing the jury that the "defendant is not on trial for any act or conduct or offense not alleged in the indictment" does not fulfill this duty of the court. Chandler's written statement admitting that she had made false entries at other times, even if analyzed in the light least favorable to her, clearly relates to different criminal episodes than the August 15, 1985, $25,565.80 false entry specified in the indictment. A conviction on this specific indictment based on Chandler's admission of other wrong acts, in the words of this court, relies upon a "set of facts distinctly different from that set forth in the indictment." *Young*, 730 F.2d at 223. Indeed, the distinction between the criminal episode particularized in the indictment and the series of other events described in Chandler's statement is so sharp that Chandler's present conviction of the crime charged would not support a claim of double jeopardy to a subsequent indictment for the wrongdoing described in her written admission.

The government's closing argument expressly related Chandler's admission only to the embezzlement charge. However, the $25,565.80 false entry charge was predicated solely on the $20,858.61 embezzlement charge. The sum and substance of the government's case was that the false entry was used to conceal this theft. Under the government's theory, it is only possible to reconcile the jury's acquittal on the embezzlement charge with its guilty finding as to false entry by assuming they desired to punish her for admitting guilt of other recordkeeping wrongs. The jury had to believe Chandler covered the advances of small sums of money to herself and fellow employees for short periods before payday by falsifying her records. The jury must have further believed these funds were returned and thus there was no embezzlement, but that the advances and returns necessitated the making of false entries in a number of her re-cap sheets. Although she didn't embezzle, she did falsify records. However, we need not establish or assume the jury's true rationale. Reversal is required if such a rationale was

permissible under the court's instructions, the evidence adduced, and the arguments of counsel. It is clear that it was.

Defense counsel did not object to the offer of Chandler's written statement as evidence. The statement, therefore, was admissible. Although it was evidence the jury could consider in connection with the false entry crime charged in the indictment, Chandler's written admission could not support a conviction by itself. In permitting the jury to choose whether the admission would be used as the sole predicate for conviction, the court erroneously permitted a constructive amendment of the indictment.

### III.

The judgment of conviction of Pamela Jo Chandler is reversed and the case is remanded for a new trial.

REVERSED AND REMANDED.

E. GRADY JOLLY, Circuit Judge, specially concurring in part and dissenting in part:

I concur in the reversal of the judgment of conviction in this case. I would not, however, remand for a new trial since I am convinced that the evidence is insufficient to support the charge made in the indictment. It is apparent to me that the prosecutor, and the majority as well, effectively concedes this fact. We should simply say so and let this defendant be done with it. Perhaps this will be the result in any event. Surely there will be no further prosecution on this indictment against this defendant if the prosecutor in this case allows judgment to prevail over zeal.