Jim R. HUNTER, Petitioner–Appellant,

v.

STATE OF NEW MEXICO; Attorney General of the State of New Mexico; Robert J. Tansey, Warden, New Mexico State Penitentiary, Respondents–Appellees.

Nos. 86–2143, 89–2063.

United States Court of Appeals, Tenth Circuit.

Oct. 18, 1990.

Rehearing and Rehearing En Banc Denied Dec. 11, 1990.

Michael G. Katz, Federal Public Defender, and Frances Smylie Brown, Asst. Federal Public Defender, Denver, Colo., for petitioner-appellant.

Hal Stratton, Atty. Gen. of New Mexico, and Charles H. Rennick, Asst. Atty. Gen., Santa Fe, N.M., for respondents-appellees.

Before SEYMOUR, BRORBY, and EBEL, Circuit Judges.

PER CURIAM.

Petitioner Jim R. Hunter appeals from an order of the district court denying his petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254.[1] Hunter was convicted of one count of first degree criminal sexual penetration (CSP) in violation of N.M.Stat.Ann. § 30–9–11(A)(1) (1978) and two counts of second degree CSP in violation of § 30–9–11(B)(1) (1978). On appeal, Hunter raises several issues, both in briefs filed by counsel and in supplementary pro se briefs.[2] The main three are: (1) that a fatal variance between the information filed against him and the jury instruction on count I denied his due process rights; (2) that a lack of specificity as to the dates of the alleged crimes violated his due process rights; and (3) that he was denied effective assistance of counsel as to all three counts.

## FACTS

Hunter was convicted based on testimony from his stepdaughter and daughter, who alleged he sexually assaulted them in their home in Deming, New Mexico. Counts I and II related to conduct involving Hunter's stepdaughter, while count III related to his daughter.

At trial, Hunter's stepdaughter testified Hunter began forcing her to have sex with him shortly after her ninth birthday in 1974 and continued until she was seventeen. She testified Hunter assaulted her by placing either his finger or his penis inside her vagina. She stated both types of penetration occurred within months of her ninth birthday. Count I of the information filed against Hunter charged first degree CSP and covered the time span between her ninth and thirteenth birthdays. Count II charged second degree CSP and included conduct occurring from her thirteenth birthday until she was sixteen.

Hunter's daughter also testified, and stated Hunter forced her to engage in sexual intercourse with him beginning in 1980 when she was thirteen. This activity continued for approximately one year. Count III of the information related to this conduct. It charged second degree CSP which allegedly occurred between February 1981 and March 1982.

The case proceeded to trial in December 1982. Hunter's defense was that he was completely innocent. He asserted his daughter and stepdaughter fabricated their stories in retaliation for his strict disciplinary practices. Hunter's wife, the girls' mother, lived in the house. However, she was incapacitated by a stroke in 1974 and was bedridden.

In his defense on count I, Hunter offered the testimony of his stepdaughter's physician, who stated that sexual intercourse with her was impossible six months prior to completion of surgery performed in January 1978 to unseal an imperforate hymen. The prosecution offered the testimony of another physician who stated sexual intercourse was possible, although probably extremely painful, prior to the surgery.

### Background

We turn first to the variance issue on count I, and begin with a review of the various statutes, instructions, and legal definitions involved in this case. Count I

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument.

2. This case has a somewhat lengthy procedural history. It was initially before this court in 1987. However, we remanded to the district court for the limited purpose of making findings of fact and rulings on the variance issue noted above and the government's exhaustion of remedies argument. On remand, the government conceded the exhaustion issue. The district court ruled that although a variance existed, it was harmless beyond a reasonable doubt.

of the information filed against Hunter charged the following:

> Criminal Sexual Penetration in the First Degree between January 1, 1974, and October 23, 1977, in that he unlawfully and intentionally *engaged in sexual intercourse* with Rebecca Cobos, a person not his spouse, who at that time was under the age of 13; contrary to Section 30–9–11(A)(1), N.M.S.A. 1978 compilation.

(Emphasis added.) As filed, this charge did not contain any language alleging finger penetration occurred. At trial, however, the court gave the following jury instruction:

> For you to find the defendant guilty of criminal sexual penetration of a child under the age of 13 as charged in count I, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. The defendant caused Rebecca Cobos to engage in sexual intercourse, *or caused the insertion, to any extent, of his penis or finger or fingers* into the vagina of Rebecca Cobos;
>
> 2. Rebecca Cobos was 12 years of age or younger;
>
> 3. Rebecca Cobos was not the spouse of the defendant;
>
> 4. This happened in New Mexico during the period of January 1, 1974, through October 22, 1977.

(Emphasis added.) The instruction allowed for conviction based on digital penetration occurring prior to June, 1975. Hunter's counsel did not object to this instruction or to the testimony regarding finger penetration.

First degree CSP as defined in the jury instruction quoted above did not exist in New Mexico prior to 1975. Rather, two different New Mexico statutes potentially applied to the conduct at issue in count I, which allegedly occurred between January 1, 1974, and October 23, 1977. Until June 1975, allegations of sexual intercourse constituted first degree sexual assault under the following statute:

> Rape of a child is committed when a male *has sexual intercourse* with a female who is under the age of 13 years, regard-

less of the male's knowledge of or mistaken belief about her age.

> Whoever commits rape of a child is guilty of a first degree felony.

N.M.Stat.Ann. § 40A–9–4 (1953). (Emphasis added.)

In contrast, allegations restricted to digital penetration fell under the following definition of fourth degree sexual assault:

> Sexual assault consists ... of *any indecent handling or touching* of any person under the age of sixteen (16) years.
>
> Whoever commits sexual assault is guilty of a fourth degree felony.

N.M.Stat.Ann. § 40A–9–9 (1953). (Emphasis added.)

In 1975, however, New Mexico passed legislation creating the crime of first degree CSP. *See* 1975 N.M. Laws 109. The crime was defined as follows:

> Criminal Sexual Penetration is the unlawful and intentional causing of a person, other than one's spouse, to engage in sexual intercourse, cunnilingus, fellatio or anal intercourse, or the causing of penetration, to any extent and with any object, of the genital or anal openings of another, whether or not there is any emission.
>
> A) Criminal Sexual Penetration in the first degree consists of all criminal sexual penetration perpetrated:
>
> 1. on a child under thirteen years of age.

N.M.Stat.Ann. § 30–9–11(A)(1) (1978).

This change occurred approximately one and a half years into the time period charged in the information. Pursuant to this statutory history, evidence that Hunter assaulted his stepdaughter through digital penetration prior to June 1975 would constitute only a fourth degree felony. On the other hand, evidence of digital penetration after 1975 would constitute first degree CSP. Count I of the information runs from January 1974 through October 1977. Therefore, it covered conduct occurring both before and after the statutory change.

Throughout the relevant time period, the maximum sentence for fourth degree sexual assault was one to five years' imprison-

ment, while first degree CSP allowed life imprisonment. N.M.Stat.Ann. § 40A–29–3 (1953). Hunter received a life sentence on count I. The significance of this sentencing disparity becomes clear through review of the jury instruction submitted on count I. The court allowed the jury to convict Hunter of first degree CSP with a finding of *either* sexual intercourse or finger penetration without regard to statutory history.

Hunter argues this variance between the information and the jury instruction requires reversal of his conviction. He asserts he was prejudiced because of the great disparity in sentencing between first degree CSP and fourth degree sexual assault. In response, the government asserts that even if there was a variance, it was harmless beyond a reasonable doubt.[3] We address these issues below.

## Discussion

■ As a preliminary matter, we recognize the great burden presented when a defendant seeks to collaterally attack a state court judgment based on an erroneous jury instruction. *See Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). It is a long-standing principle that " 'habeas proceedings may not be used to set aside a state conviction on the basis of erroneous jury instructions unless the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense.' " *Shafer*, 905 F.2d at 507 (quoting *Brinlee v. Crisp*, 608 F.2d 839, 854 (10th Cir.1979), *cert. denied*, 444 U.S. 1047, 100 S.Ct. 737, 62 L.Ed.2d 733 (1980)). In this case in particular, we are restricted to a review for plain error due to counsel's failure to object to the instruction presented on count I[4]. *See* Fed.R.Crim.P. 52(b).

■ However, it is a fundamental precept of federal constitutional law that a "court cannot permit a defendant to be tried on charges that are not made in the indictment." *Stirone v. United States*, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960). Every accused has the right to be informed of the nature and cause of the accusations filed against him. U.S. Const. amend VI; *Government of V.I. v. Joseph*, 765 F.2d 394, 397 (3d Cir.1985). A fatal variance denies a defendant this fundamental guarantee because it destroys his right to be on notice of the charge brought in the indictment.[5] *United States v. Peterman*, 841 F.2d 1474, 1477 (10th Cir.1988), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 783, 102 L.Ed.2d 774 (1989); *Ricalday*, 736 F.2d at 207 and n. 4.

■ A simple variance occurs "when 'the charging terms are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment.' " *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir.1986) (quoting *United States v. Castro*, 776 F.2d 1118, 1121 (3d Cir.1985), *cert. denied*, 475 U.S. 1029, 106 S.Ct. 1233, 89 L.Ed.2d 342 (1986)); *see also United States v. Mobile Materials, Inc.*, 881 F.2d 866, 872 (10th Cir.1989) (variance occurs when trial evidence establishes facts different than those charged), *cert. denied*, —— U.S. ——, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990). This type of variance triggers harmless error analysis. *Browning v. Foltz*, 837 F.2d 276, 280 (6th Cir.1988), *cert.*

---

**3.** The State of New Mexico also has raised the issue of procedural bar. However, the Supreme Court has stated this doctrine will not apply absent a statement from the last state court addressing the issue that it rested its judgment on a state procedural bar. *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989); *see also Shafer v. Stratton*, 906 F.2d 506, 509 (10th Cir.1990). The New Mexico state courts did not render such a judgment here.

**4.** We recognize that this failure may relate to Hunter's ineffective assistance of counsel claim. *See Ricalday v. Procunier*, 736 F.2d 203, 207 (5th Cir.1984). However, we need not reach this claim in light of our disposition on the variance issue.

**5.** The rule against impermissible variances is also rooted in the fifth amendment right to a grand jury. In federal cases, charges may not be broadened once they are returned except by a grand jury. *See Stirone*, 361 U.S. at 215–16, 80 S.Ct. at 272–73. Because this case involves a state court conviction originally filed by information, this aspect of the prohibition does not apply here.

*denied*, 488 U.S. 1018, 109 S.Ct. 816, 102 L.Ed.2d 805 (1989).

■ Where a simple variance exists, "convictions generally have been sustained as long as the proof upon which they are based corresponds to an offense that was clearly set out in the indictment." *United States v. Miller*, 471 U.S. 130, 136, 105 S.Ct. 1811, 1815, 85 L.Ed.2d 99 (1985). Such a variance is fatal only when the defendant is prejudiced in his defense because he cannot anticipate from the indictment what evidence will be presented against him or is exposed to the risk of double jeopardy. *United States v. Whitman*, 665 F.2d 313, 318 (10th Cir.1981); *United States v. Young*, 730 F.2d 221, 225 (5th Cir.1984).

■ On the other end of the variance spectrum are more severe alterations described as "constructive amendments" of the indictment. "An indictment is constructively amended if the evidence presented at trial, together with the jury instructions, raises the possibility that the defendant was convicted of an offense other than that charged in the indictment." *United States v. Apodaca*, 843 F.2d 421, 428 (10th Cir.), *cert. denied*, 488 U.S. 932, 109 S.Ct. 325, 102 L.Ed.2d 342 (1988). The specific inquiry is whether the jury was permitted to convict the defendant upon " 'a set of facts distinctly different from that set forth in the indictment.' " *United States v. Chandler*, 858 F.2d 254, 257 (5th Cir.1988) (quoting *Young*, 730 F.2d at 223).

■ Although the difference between the two types of variance is "shadowy" at best, *see Hathaway*, 798 F.2d at 910, a constructive amendment is more dangerous because it actually modifies an essential element of the offense charged. *Id.* In order to rise to this level, the change in the indictment must be more than the addition or deletion of nonessential factual averments. Rather, the amendment must effectively alter the substance of the indictment. *See United States v. Adams*, 778 F.2d 1117, 1123 (5th Cir.1985) (constructive amendment occurs where defendant indicted for using license with a false name but possibly convicted only due to false ad-

dress). A variance which rises to the level of a constructive amendment is reversible per se. *Apodaca*, 843 F.2d at 428.

■ Here, the jury was allowed to "convict the defendant upon a factual basis that effectively modifie[d] an essential element of the offense charged." *Chandler*, 858 F.2d at 257 (quoting *Young*, 730 F.2d at 223). In submitting an erroneous instruction, the court allowed the jury to convict Hunter of first degree CSP based on evidence of digital penetration prior to June 1975. As stated, first degree CSP did not even exist in New Mexico at that time. From January 1974 through June 1975, evidence of digital penetration constituted only a fourth degree offense. In *United States v. Peterman*, we stated:

> Jury instructions may not include an element of an offense if that element was not charged in the indictment. The Court in *United States v. Lemire*, 720 F.2d 1327, 1344 (D.C.Cir.1983), *cert. denied*, 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984) noted two dangers that arise from a substantial deviation of instructions from an indictment. First, a defendant is required to answer to a charge that was not brought by a grand jury.... Second, a defendant is denied sufficient notice to present and prepare an adequate defense to the crime charged.

841 F.2d at 1477 (citations omitted).

The addition to the jury instruction in this case was not a "useless averment" which was "unnecessary to and independent of" the essential parts of the information. *See Miller*, 471 U.S. at 136, 105 S.Ct. at 1815. To the contrary, the jury was allowed to convict Hunter on a different set of facts than those set forth in the information. It is possible the jury convicted him of first degree sexual assault based only on digital penetration occurring prior to June, 1975. Further, on the instruction provided, the jury could have found Hunter guilty of fourth degree sexual assault, a charge not found in the information. Consequently, we hold the modified jury instruction con-

stituted a constructive amendment of the information which requires reversal.

Assuming that the jury based its verdict on evidence of sexual intercourse *after* the statutory change cannot cure this amendment because it requires us, as an appellate court, to presume the jury's thinking. This we cannot do. *See Chandler*, 858 F.2d at 257–58 ("[W]e need not establish or assume the jury's true rationale. Reversal is required if such a rationale was *permissible* under the court's instructions, the evidence adduced, and the arguments of counsel.") (Emphasis added.) In light of the testimony from physicians indicating sexual intercourse was difficult, if not impossible, there is a real possibility the jury convicted Hunter based on evidence of digital penetration.

Therefore, the judgment convicting Hunter on count I of the information must be reversed and the case remanded for a new trial on that charge. In light of our disposition, we need not reach the ineffective assistance of counsel claim or other due process claims related to count I.[6]

We have reviewed defendant's argument that the information was deficient in failing to identify specific dates for the crimes alleged and do not find it persuasive. *See United States v. Nunez*, 668 F.2d 10, 12 (1st Cir.1981); *State v. Carr*, 95 N.M. 755, 626 P.2d 292, 306 (N.M.Ct.App.), *cert. denied*, 454 U.S. 853, 102 S.Ct. 298, 70 L.Ed.2d 145 (1981). Likewise, we do not find Hunter's other ineffective assistance of counsel claims persuasive. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Therefore, the convictions on counts II and III must stand.[7]

Accordingly, the case is AFFIRMED in part, REVERSED in part, and REMANDED to the United States District Court for the District of New Mexico with directions to grant the writ of habeas corpus following the State of New Mexico's determination whether petitioner has discharged his sentences under counts II and III. The state shall make this determination within thirty days of issuance of the mandate. The State of New Mexico shall also be directed to vacate the conviction and, if it so chooses, commence a new trial on count I within 60 days after the mandate issues.

---

6. Hunter also has argued that application of N.M.Stat.Ann. § 30–9–11(A)(1) (1978) to pre–1975 conduct constitutes an ex post facto due process violation. Although we recognize this issue exists, we need not address it in light of our disposition on the variance issue.

7. In the appellate briefs which court appointed counsel filed, only count I of the conviction was challenged. However, Hunter's pro se habeas petition and supplementary pro se briefs appear to challenge all three convictions. We have reviewed all the arguments presented and do not find them persuasive.