962 F.2d 17
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Gene Aldon BURROWS, Petitioner-Appellant
v.
Stephen W. KAISER, Respondent-Appellee.
 No. 90-6185.
 United States Court of Appeals, Tenth Circuit.
 May 1, 1992.
 
 1
 Before STEPHEN H. ANDERSON and BALDOCK, Circuit Judges and SAM, District Judge.**
 
 
 2
 ORDER AND JUDGMENT***
 
 
 3
 SAM, District Judge.
 
 I. INTRODUCTION
 
 4
 This is an appeal from the judgment of the United States District Court for the Western District of Oklahoma in which appellant/defendant Gene A. Burrows ("Burrows") was denied habeas corpus relief.
 
 
 5
 In May 1986, Burrows was convicted by a jury of Harboring a Fugitive from Justice After Former Conviction of a Felony. The trial court, adopting the verdict of the jury regarding punishment, sentenced Burrows to thirty-seven years imprisonment. After unsuccessful appeal to the state courts, Burrows filed a pro se petition for writ of habeas corpus in federal district court.
 
 
 6
 Burrows filed a pro se opening brief with this court on July 12, 1990. On January 7, 1991, the office of the Federal Public Defender was appointed to represent Burrows and to file a supplemental opening brief.
 
 II. FACTS
 
 7
 On December 20, 1985, Jeffrey Little ("Little") escaped from the Potowatomie County, Oklahoma jail. Subsequent to his escape, Little stayed at the residence of Burrows and his girl friend, Jane, for approximately one week. He joined them for meals and had a bedroom in which to sleep. During the course of his stay, Geraldine Hogue, Jane's sister, cut and colored his hair.
 
 
 8
 On January 10, 1986, while conducting surveillance on Burrows' residence, sheriff's officers observed Melody Carr, a woman known to date Little, enter and leave Burrows' home. When she left, an officer stopped her and learned that Little was at the house. Other officers were called, who surrounded the house and demanded that the occupants come out. All occupants, except Little, came out and were arrested and handcuffed. While in the patrol car outside the house, Burrows talked first with Undersheriff McMunn and then with Sheriff Able. He was advised of his Miranda rights prior to speaking with Sheriff Able, but it is unclear if he was advised of his rights prior to talking to Undersheriff McMunn.
 
 
 9
 Burrows told Undersheriff McMunn that he would go back into the house and talk "Jeffrey Little" out in order to keep anyone from getting hurt. Burrows indicated to Sheriff Able that the others had nothing to do with the situation and inquired whether they could be released if he could talk "Jeff" out of the house without any trouble. Burrows was permitted to go in and talk to Little and three or four minutes later both men exited the house and surrendered.
 
 
 10
 At trial, Christina McCune, testified that she had been to Burrows' house on three occasions while Little was staying there. She stated that Burrows and the others referred to Little by his real name, while joking about the use of "James" as a cover up. She also testified that Burrows and the others were present for a discussion between herself and Little about his breaking out of jail. She further testified that, on the night police surrounded the house, Burrows helped Little hide in a cabinet in the kitchen before he exited the house.
 
 
 11
 Little, on the other hand, testified that Burrows and his girl friend Jane did not know he was an escapee and that he had introduced himself to them as "James". Little stated that Burrows did not know Little's real name was Jeff until Little admitted it to him on the night of the arrests and that Burrows did not assist him in his attempts to hide from the police on the night of the arrests. Burrow's girlfriend, Jane, likewise testified that she knew Little only as "James".
 
 III. DISCUSSION
 
 12
 Burrows raises four issues on appeal.
 
 
 13
 1. His rights to due process were violated by the trial court's failure to properly instruct the jury regarding the "knowingly" element of the harboring a fugitive offense, and by its instruction on means of committing the offense which were not charged and which constructively amended the information.
 
 
 14
 2. His Fifth and Fourteenth Amendment rights were violated by the government's improper comments on his post-arrest silence.
 
 
 15
 3. Admission at trial of a tape recording, which included a police officer's opinion regarding the evidence and Burrows' guilt, rendered his trial fundamentally unfair in violation of his rights to due process.
 
 
 16
 4. The district court erred by failing to grant him an evidentiary hearing on his Sixth Amendment claim of ineffective assistance of counsel and by concluding that he was barred from federal habeas review due to procedural default.
 
 1.
 
 17
 Burrows first asserts that his rights to due process were violated by the trial court's failure to properly instruct the jury regarding the "knowingly" element of the harboring a fugitive offense, and by its instruction on means of committing the offense which were not charged and which constructively amended the information.
 
 
 18
 A. Failure to Define Knowingly.
 
 
 19
 The relevant portion of the instruction given the jury provides that the elements of the harboring a fugitive offense are: "First: Knowingly; Second: Feeding, lodging ... in any manner; Third: Any person guilty of any felony ... or seeking to escape arrest for any felony...."
 
 
 20
 Burrows urges that the district court erred when it adopted the reasoning of the state appellate court which found that the word "knowingly" was self-explanatory, such that a person of common understanding would know what was intended. (The district court also found that the instruction did not render the trial fundamentally unfair.) Burrows argues that the omission of an additional mens rea instruction caused the jury to be without guidance not only as to the meaning of the term "knowingly" but also to be without guidance as to how to apply it in this case. He relies on Hunt v. State of Oklahoma, 683 F.2d 1305 (10th Cir.1982), an obscenity case in which we held that failure to more thoroughly identify the term "knowingly" was constitutional error. In Hunt, however, we ultimately held that the error was harmless because there was no reasonable possibility that the verdict would have been different had the proper scienter instruction been given.
 
 
 21
 Burrows further argues that, although the evidence clearly establishes that he directly and voluntarily provided food and lodging to Little, the evidence was contradictory as to whether he knew Little was an escapee from the county jail. For this proposition, Burrows relies on the testimony of Little.
 
 
 22
 The record reflects, however, that Christine McCune testified that she visited Little at Burrows' home and that Burrows and others referred to him by his true name "Jeff", although several times laughingly calling him "James". Moreover, the record reflects that when the officers questioned Burrows before Little exited, Burrows referred to Little as "Jeff".
 
 
 23
 Federal habeas corpus review of jury instructions is limited. "Habeas proceedings may not be used to set aside a state conviction on the basis of erroneous jury instructions unless the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in a constitutional sense ... or is otherwise constitutionally objectionable as, for example, by transgressing the constitutionally rooted presumption of innocence." Brinlee v. Crisp, 608 F.2d 839, 854 (10th Cir.1979), cert. denied, 444 U.S. 1047 (1980). Before a defendant may obtain collateral relief for errors in jury instructions, he must show that " ' "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process", not merely whether, "the instruction is undesirable, erroneous, or even universally condemned." ' " United States v. Frady, 456 U.S. 152, 169 (1982) (quoting Henderson v. Kibbe, 431 U.S. 145, 154 (1977), quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). We find that there was no error in the district court's conclusion that the jury instructions did not render the trial fundamentally unfair. The weight of the evidence indicates Burrows' knowledge that he was harboring a fugitive. Given the evidence against the defendant, error, if any, in the trial court's instruction was harmless and did not violate defendant's due process.
 
 
 24
 B. Surplus Language in the Jury Instructions.
 
 
 25
 Burrows also contends that there was a constructive amendment of the information which violated his due process rights. The information charged that Burrows "did ... feed, lodge, clothe, harbor, aid, assist and conceal" whereas the jury instruction stated that he could be found guilty for "feeding, arming, equipping in whole or in part, harboring, aiding, assisting, or concealing in any manner ...". Burrows argues that by adding "arming and equipping" as a means of harboring a fugitive, the trial court constructively amended the information in violation of his rights to due process. The district court found that a new charge was not added to the instruction by the surplus language and that, in light of the evidence against Burrows, his due process rights were not violated. Burrows relies on Hunter v. State of New Mexico, 916 F.2d 595 (10th Cir.1990) (habeas relief granted where court instructed jury that petitioner could be found guilty of sexual assault if he engaged in sexual intercourse or digital penetration when the information charged him only with sexual assault by means of sexual intercourse); and United States v. Sloan, 811 F.2d 1359 (10th Cir.1987) (defendant's Fifth Amendment rights violated where jury was instructed that "[w]hoever unlawfully seizes, confines, inveigles, decoys, kidnaps, or carries away ... any person" is guilty of offense, when indictment charged him with effecting the kidnapping by force by seizing and abducting the victim). Burrows asserts that his due process rights were violated because the trial testimony of Sheriff Able, that his officers assumed Little to be armed and dangerous, provided circumstantial evidence from which the jury could have concluded that Burrows armed Little.
 
 
 26
 We do not find Hunter or Sloan persuasive in this case. In Sloan, the court held that the addition of the words "inveigles" and "decoys" was prejudicial because the victim's testimony was equivocal regarding the use of force. That is not the situation present in this case. There was no evidence presented at trial that Burrows armed Little. Similarly, in Hunter, the jury was allowed to convict upon a factual basis that modified an element of the charged offense. " 'An indictment is constructively amended if the evidence presented at trial, together with the jury instructions, raises the possibility that the defendant was convicted of an offense other than that charged in the indictment.' " Hunter v. State of New Mexico, 916 F.2d 595, 599 (10th Cir.1990) (quoting United States v. Apodaca, 843 F.2d 421, 428 (10th Cir.), cert. denied, 488 U.S. 932 (1988)). In the instant case there was no viable evidence presented at trial that Burrows armed Little. Therefore, there was not the possibility that Burrows was convicted of an offense other than the one charged in the information. In light of other evidence of Burrows' guilt, the deviation between the jury instruction and the information was not so prejudicial that it denied defendant a fair trial in the constitutional sense. Linebarger v. Oklahoma, 404 F.2d 1092 (10th Cir.1968), cert. denied, 394 U.S. 938 (1969); Brinlee v. Crisp, 608 F.2d 839 (10th Cir.1979), cert. denied, 444 U.S. 1047 (1980); United States v. Frady, 456 U.S. 152 (1982). We find no error in the district court's conclusion that Burrows' due process rights were not violated.
 
 2.
 
 27
 Burrows next claims that testimony offered by Undersheriff McMunn constituted an impermissible comment on his Fifth Amendment right to remain silent. Undersheriff McMunn, in response to a question regarding whether he had given Burrows his Miranda warning, testified at trial, in relevant part, as follows:
 
 
 28
 Now, when we got back to the office, whether the sheriff talked to him before I did, I'm really not certain of that. But I did attempt to question him further when we got to the sheriff's office. And at that time he advised me that he wasn't really familiar with what the charge of Harboring a Fugitive was. And at that point in time, he didn't wish to make any more statements until he had talked to an attorney.
 
 
 29
 The district court found that the comment referred to the fact that Burrows had voluntarily talked with officers when he was arrested and that any error was harmless.
 
 
 30
 Reference to an accused's failure to testify is a constitutional violation if " 'the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment' on the defendant's right to remain silent." United States v. Morales-Quinones, 812 F.2d 604, 613 (10th Cir.1987) (quoting United States v. Barton, 731 F.2d 669, 675 (10th Cir.1984). We are of the opinion that the Undersheriff's comment was not manifestly intended or of the character to draw the jury's attention to the fact that Burrows wished to exercise his right to remain silent. In any event, given the other evidence in the case, we concur with the district court that error, if any, was harmless.
 
 3.
 
 31
 Burrows next argues that the admission of a tape recording which included Undersheriff McMunn's opinion regarding the evidence and Burrows' guilt rendered the trial fundamentally unfair in violation of his right to due process.
 
 
 32
 At trial, a tape recording was admitted of a conversation between Undersheriff McMunn and Little in which Undersheriff McMunn expressed his opinion regarding the probable culpability of Burrows. Burrows claims that this situation is analogous to those cases[1] which have held that due process prohibits a prosecutor from expressing his personal opinion regarding the evidence or the guilt of the accused. The distinction here, of course, is that the comments were made by a sheriff's officer rather than the prosecutor. The tape was introduced, after Little testified, for purposes of impeachment.
 
 
 33
 Burrows asserts that the jury had a right to determine his guilt or innocence based upon their assessment of the credibility of the witnesses and the strength of the government's case rather than the opinions of the sheriff and prosecutor.
 
 
 34
 We find that admission of the tape recording, although it contained material that was irrelevant, in light of the other evidence against Burrows, was not so egregious that it denied him due process. Habeas relief is thus not appropriate. Chavez v. Kerby, 848 F.2d 1101, 1102 (10th Cir.1988); Brinlee v. Crisp, 608 F.2d 839, 850 (10th Cir.1979), cert. denied, 444 U.S. 1047 (1980).
 
 4.
 
 35
 Finally, Burrows contends that the district court erred by failing to grant him an evidentiary hearing on his Sixth Amendment claim of ineffective assistance of counsel and by concluding that he was barred from federal habeas review of this claim due to procedural default.
 
 
 36
 Burrows asserts that his trial counsel was ineffective because he failed to litigate Burrows' Fourth Amendment claims. Specifically, Burrows asserts that his trial counsel failed to file a pretrial motion to suppress statements made by him when he was arrested at his home without a warrant and without probable cause.
 
 
 37
 The district court ruled that Burrows had failed to comply with Oklahoma's procedural rules regarding preservation of issues. It then concluded that Burrows failed to set forth any reason for not raising the claim on direct appeal in state court, or show any prejudice and, therefore, denied relief. Wainwright v. Sykes, 433 U.S. 72 (1977) (petitioner must show cause for his default and resulting prejudice). There was no factual dispute and therefore no need for a hearing.
 
 
 38
 Burrows urges that before a state procedural rule bars federal review it must be independent and adequate, and it is not adequate unless strictly or regularly followed. Here Burrows asserts that the state procedural bar is not applied uniformly in Oklahoma and, therefore, the bar does not apply. However, the state has cited cases[2] which indicate the Oklahoma courts' commitment to the procedural bar rule in post-conviction claims.
 
 
 39
 In order to prevail on this issue, Burrows had to convince the district court that he had "cause" for his default in not raising this issue in his direct appeal in state court, and how he suffered "prejudice" therefrom. Engle v. ISAAC, 456 U.S. 107 (1982). We find Burrows' argument, that the rule is not uniformly applied in Oklahoma, unpersuasive. Although unnecessary, the lower court went on to examine the underlying claim of ineffective assistance of counsel, i.e., that trial counsel should have filed a motion to suppress. It concluded that there were exigent circumstances sufficient to justify Burrows' warrantless arrest and that the filing of a motion to suppress would not have altered the outcome of the trial. We agree.
 
 IV. CONCLUSION
 
 40
 The judgment of the lower court, denying appellant's petition for Writ of Habeas Corpus, is AFFIRMED.
 
 
 
 *
 The parties agreed that oral argument was unnecessary and that the case could be submitted on the briefs. R.App.P. 34(f); 10th Cir.R. 34.1.2. The case, therefore, was ordered submitted without oral argument
 
 
 **
 The Honorable David Sam, Judge for the United States District Court for the District of Utah, sitting by designation
 
 
 ***
 This order and judgment has no precedential value and shall not be cited or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 363
 
 
 [1]
 Among other cases, Burrows cites: United States v. Hooks, 780 F.2d 1526 (10th Cir.), cert. denied, 475 U.S. 1128 (1986); United States v. Rios, 611 F.2d 1335 (10th Cir.1979); United States v. Ludwig, 508 F.2d 140 (10th Cir.1974)
 
 
 [2]
 Jones v. State, 704 P.2d 1138 (Okla.Crim.App.1985); Smith v. State, 546 P.2d 1351 (Okla.Crim.App.1976); Hale v. State, 62 O.B.A.J. 701 (Okla.Crim.App. February 26, 1991); Castleberry v. State, 590 P.2d 697 (Okla.Crim.App.1979); Cartwright v. State, 708 P.2d 592 (Okla.Crim.App.1985); Ellington v. Crisp, 547 P.2d 391 (Okla.Crim.App.1976)