**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 3 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

|   |   |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>RONALD D. FAILING,<br><br>Defendant-Appellant. | No. 03-1226<br><br>(D. Colorado)<br><br>(02-CR-532-B) |

**ORDER AND JUDGMENT** [*]

Before **HENRY** , **BALDOCK** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to decide this case on the briefs without oral argument. *See* FED. R. APP. P. 34(f). The case is therefore ordered submitted without oral argument.

Ronald Failing appeals his conviction for making a false statement in violation of 18 U.S.C. § 1001. Mr. Failing, a former railroad engineer, pleaded guilty to one count (count 12) of withholding employment information from the Railroad Retirement Board on his Continuing Disability Form, in exchange for the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10TH CIR. R. 36.3.

dismissal of ten counts of a twelve-count indictment. The parties agreed to proceed to a bench trial on the remaining count (count eleven), which charged the violation of § 1001. Mr. Failing was convicted and sentenced to a five-year term of probation on count 12 and a concurrent 5-year term of probation on count 11.

On appeal, Mr. Failing asserts that because the answers he provided on the relevant form were literally true, his conviction cannot stand. He also asserts that there was a fatal variance between the indictment and the evidence presented at trial. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm Mr. Failing's conviction and sentences.

## I. BACKGROUND

Mr. Failing began working as a railroad engineer in October 1965. In June 1989, he applied for a disability annuity, administered by the Railroad Retirement Board. Mr. Failing was required to complete an application for determination of his disability. He signed the application certifying that he understood he was required to report events that would affect his receipt of benefits; for example, he was required to notify the Board if he performed any work. Mr. Failing also certified that he understood that he would be committing a federal offense if he made a false or fraudulent statement in order to receive benefits from the Board.

Mr. Failing also certified that he received a booklet from the Board, which explained, among other things, that the disability annuity was not payable for any month that a person performs work and earns income over $400. The booklet again cautioned the applicant of his or her obligation to promptly report any work, regardless of the income earned.

In April 1990, the Board determined that Mr. Failing was eligible for disability payments. From that date through August 2002, when his benefits ended, he received a monthly annuity from the Board. Once a year, the Board sent Mr. Failing and other beneficiaries a notice reminding them of their duty to notify the Board in the event they performed any paid work. The notice stated that the beneficiaries must return their annuity for any month during which earnings from that work exceeded $400, and it repeated the threat to prosecute wrongdoers.

In early 2002, the Board sent a "Continuing Disability Report" to Mr. Failing. Mr. Failing was required to complete the report, which asked for information from March 1, 1997, until the present, and return it to the Board. He returned the form in February 2002.

In Section 3, titled "Information about Work for an Employer," Mr. Failing indicated that between April 2000 and September 2001, he had worked one day a month for the North Jeffco Recreation District as a marshal supervisor of a public

golf course, earning $8.50 per hour. He indicated he worked approximately "2 to 3 day[s] per month for 5 months" for that district. Aplt's Br. att. D. at 2. Mr. Failing wrote "N/A" in response to queries about additional employers. *Id.*

In October 2001, Mr. Failing accepted a job as a security screener for First Watch Security Services at Denver International Airport. Mr. Failing acknowledges that his monthly earnings from this job exceeded $400. During his employment, which lasted until August 2002, Mr. Failing continued to receive a monthly disability annuity.

In August 2002, an agent from the Board's Office of Inspector General interviewed Mr. Failing, who admitted that he failed to inform the Board of his employment. Mr. Failing indicated that he understood that any such disclosure would have caused his benefits to end, and he feared losing his home in the event the Board terminated his monthly annuity.

As a result, the government indicted Mr. Failing on ten counts of unlawful receipt and retainment of government benefits, in violation of 18 U.S.C. §§ 641 and 2; one count of making a false statement of material fact in violation of 18 U.S.C. § 1001; and one count of failing to inform the Board of income that he earned while receiving disability benefits from the Board, in violation of 45 U.S.C. § 231(1). Mr. Failing pleaded guilty to the § 231(1) charge, in exchange

for the dismissal of the ten counts of unlawful receipt of benefits. As to the §

1001 charge, the parties agreed to a bench trial based on stipulated facts.

## II. DISCUSSION

Mr. Failing challenges his conviction contending (1) there was insufficient

evidence to sustain a false statement conviction, and (2) there was a constructive

amendment to the indictment. We reject each challenge and affirm Mr. Failing's

conviction.

### A. Sufficiency of evidence

In considering Mr. Failing's first argument, we ask "whether, after viewing

the evidence in the light most favorable to the prosecution, any rational trier of

fact could have found the essential elements of the crime beyond a reasonable

doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis deleted); *United

States v. Wilson*, 244 F.3d 1208, 1219 (10th Cir. 2001). Our review of the record

is de novo, and we draw all reasonable inferences in the light most favorable to

the government. *Wilson*, 244 F.3d at 1219. We do not reevaluate the credibility

of witnesses or weigh the evidence presented at trial. *Id.*

Count eleven charged Mr. Failing with the knowing and willful making and

causing

> to be made false, fictitious and fraudulent statements and
> representations as to material facts [and] stated and
> represented to the . . . Board . . . that he was then disabled
> and employed 1 day per month working 2 hours per day

and earing 8.50 per hour, whereas, in truth and fact . . . he had gross income and wages from employment in excess of $1,000.00 a month for the period of approximately October, 2001 through August, 2002.

Rec. vol. I, doc. 1, at 2 (Indictment).

Title 18 § 1001(a) provides that anyone who

(1) *falsifies, conceals, or covers up by any trick, scheme, or device a material fact;*
(2) *makes any materially false, fictitious, or fraudulent statement or representation;* or
(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

shall be fined under this title or imprisoned not more than 5 years, or both.

*Id.* (emphasis added). Accordingly, to convict Mr. Failing, the government had to prove five elements:

(1) the defendant made a statement; (2) the statement was false, fictitious, or fraudulent as the defendant knew; (3) the statement was made knowingly and willfully; (4) the statement was within the jurisdiction of the federal agency; and (5) the statement was material.

*United States v. Harrod*, 981 F.2d 1171, 1175 (10th Cir. 1992) (internal quotation marks omitted). Mr. Failing contends that the government cannot establish the second element – that the statement was "false, fictitious, or fraudulent as the defendant knew." *Id.*

He maintains that because his statements in the Continuing Disability Report as to his past employment at the public golf course were true statements, he cannot be convicted of violating § 1001. Furthermore, as to his omission of providing information regarding his job at DIA, he contends that count twelve of the indictment did not encompass this omission, because it charged him with "[f]ailing to [r]eport . . . [i]nformation." Rec. vol. I, doc. 1, at 3.

We are not persuaded by Mr. Failing's argument. The Continuing Disability Report signed by Mr. Failing requested him to report his most recent employment, and then to report his "second last employer." Aplt's Br. att. D, at 2. There is no question Mr. Failing provided an incomplete answer. We have held that a nonresponsive answer, even if literally a truthful answer, can be the basis of a conviction under § 1001. *See Harrod*, 981 F.2d at 1175 (upholding a conviction under § 1001 and stating that "[w]hen seeking information outside the adversarial context of trial, the government needs and expects those who answer its inquiries . . . to answer truthfully and precisely"). Furthermore the form clearly stated that "I understand that civil and criminal penalties may be imposed upon me for false or fraudulent statements, or *for withholding information to misrepresent a fact or facts* material to determining a right to benefits under the Railroad Retirement Act." *See* Aplt's Br. att. D, at 15 (emphasis added); *see also United States v. Goodson*, 155 F.3d 963, 967 (8th Cir. 1998) (upholding

-7-

conviction under § 1001: "Based upon our review of the record, we are satisfied that the government produced ample evidence to support a finding that [defendant's] statement to the SSA was a bald, intentional misrepresentation of his work activities."). Mr. Failing admitted that he knew his benefits would terminate if he had reported his work at DIA. We hold that, drawing all reasonable inferences in the government's favor, there was sufficient evidence to convict Mr. Failing of violating § 1001.

### B. Constructive amendment to the indictment

Mr. Failing next alleges a fatal variance between the proof adduced at trial and the conduct charged in the indictment. He concedes that had the indictment charged him with concealing a material fact or withholding information, that a conviction might have ensued. Because the indictment did not encompass the concealment or omission of a material fact from the Continuing Disability Report, but rather the falsity of a statement, he maintains, the district court constructively amended the indictment, and this variance violated his due process rights.

We review de novo the issue of whether there was a fatal variance between the allegations of the indictment and the evidence presented at trial. *United States v. Williamson*, 53 F.3d 1500, 1512 (10th Cir. 1995). Variances between conduct charged in an indictment and proof at trial are of three kinds: harmless, fatal and fatal per se. *Hunter v. New Mexico*, 916 F.2d 595, 598-99 (10th Cir.

1990). At one end of the spectrum is the simple variance which occurs "when the charging terms are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *Id.* at 598 (internal citation and quotation omitted). We apply harmless error analysis to a simple variance. At the other end of the spectrum "are more severe alterations described as 'constructive amendments' to the indictment." *Id.* "An indictment is constructively amended if the evidence presented at trial, together with the jury instructions, raises the possibility that the defendant was convicted of an offense other than that charged in the indictment." *Id.* (internal quotation marks omitted). "A variance which rises to the level of a constructive amendment is reversible per se." *Id.*; *see United States v. Mills,* 29 F.3d 545, 548 (10th Cir. 1994) ("A constructive amendment that broadens an indictment is reversible error per se, because only the grand jury can amend an indictment.").

We disagree with Mr. Failing's suggestion that any sort of variance exists. Mr. Failing was charged with making "false, fictitious and fraudulent statements and representations as to material facts" by claiming he was only working one day a month at a golf course when in fact he knew he had "gross income and wages from employment in excess of $1,000.00 a month" between October 2001 and August 2002. Rec. vol. I, doc. 1, at 2-3. Mr. Failing's responses regarding his employment were unquestionably false and/or fraudulent: he did not provide

details regarding his most recent employment, and he responded "N/A" when asked about other employment and income.

We also reject Mr. Failing's contention that he did not have notice of what the government intended to prove at trial. *See Williamson*, 53 F.3d at 1514 (stating "the defendants cannot reasonably claim they did not have notice of what the government intended to prove at trial, which, as stated before, is the central purpose behind the prohibition against simple variances"). Finally, we reject his suggestion that his conviction on count eleven raises double jeopardy concerns, because Congress has separately proscribed both the making of false statements, and the willful failing to report information. *See United States v. Woodward*, 469 U.S. 105, 109 (1985) (rejecting double jeopardy challenge to convictions under 18 U.S.C. § 1001 (false statement) and a count under 31 U.S.C. § 1101(a) (willfully failing to report the transporting of more than $5,000), noting that the "statutes are directed towards separate evils") (internal quotation marks omitted).

## III. CONCLUSION

For the reasons stated above, we **AFFIRM** Mr. Failing's conviction and sentence.

Entered for the Court

Robert H. Henry
Circuit Judge

-10-