# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 3, 2012

No. 11-50123

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JERROD GARDENHIRE; GARY GARDENHIRE,

Defendants-Appellants

Appeals from the United States District Court
for the Western District of Texas
USDC No. 7:10-CR-1722

Before SMITH, GARZA, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

A jury convicted Gary Gardenhire and Jerrod Gardenhire of six counts of mail fraud and one count of conspiracy to commit mail fraud. On appeal, they assert that the district court's jury instruction constructively amended the indictment in violation of the Grand Jury Clause and Due Process Clause of the Fifth Amendment. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-50123

## I

Gary Gardenhire, Jerrod Gardenhire, Cody Eckel, and Fred Foster were indicted on six counts of mail fraud, 18 U.S.C. § 1341, and one count of conspiracy to commit mail fraud, 18 U.S.C. § 1349. Eckel and Foster entered guilty pleas, and the Gardenhires proceeded to trial. The facts surrounding the mail fraud scheme, viewed in the light most favorable to the verdict, were as follows. *See United States v. Rains,* 615 F.3d 589, 592 (5th Cir. 2010).

Gary Gardenhire and Larry Wayne Webb became friends while working for Austin Distributing, a hydraulic hose business. Webb and Gary subsequently started a new hydraulic hose business together called The Hose Connection (THC). Webb owned 60% of THC and Gary owned 40%. In addition to being a co-owner, Gary was a salaried employee, responsible for managing THC's day-to-day operations. Gary and Webb also hired Gary's brother Jerrod as a salesman.

After customers purchased equipment from THC, the Gardenhires, without Webb's knowledge, sent invoices for the equipment from a separate company, owned by the Gardenhires, called Louder Than Hell Speakers (LTH). Then, with the encouragement of Eckel and Foster, who received commissions for their aid in the fraud, THC's customers sent payments to LTH. Through this scheme, the Gardenhires pilfered at least $1.75 million worth of payments from THC.

At the close of trial, pursuant to Gary's request, the district court instructed the jury using Fifth Circuit Pattern Jury Instruction 2.59. The instruction stated in part that a "'scheme to defraud' includes any scheme to deprive another of money, property, or of the intangible right to honest services by means of false or fraudulent pretenses, representations, or promises." None of the parties objected to the instruction, and the jury found the Gardenhires guilty on all counts alleged in the indictment. The district court sentenced Jerrod to 46 months imprisonment and three years of supervised release; it

2

No. 11-50123

sentenced Gary to 57 months' imprisonment and three years of supervised release. Jerrod and Gary filed a timely notice of appeal.

## II

On appeal, the Gardenhires contend that the district court erred by including the "intangible right to honest services" language in the jury instruction. The Gardenhires assert that by doing so the district court constructively amended the indictment, which did not include a charge regarding the right to honest services, in violation of the Grand Jury Clause and Due Process Clause of the Fifth Amendment.[1]

A defendant who has been indicted by a grand jury has a Fifth Amendment right to be tried solely on the allegations made by that grand jury. *Stirone v. United States*, 361 U.S. 212, 215-18 (1960). "The indictment cannot be 'broadened or altered' except by the grand jury." *United States v. Arlen*, 947 F.2d 139, 144 (5th Cir. 1991) (quoting *United States v. Chandler*, 858 F.2d 254, 256 (5th Cir. 1988)). A constructive amendment of the indictment "occurs when the trial court 'through its instructions and facts it permits in evidence, allows proof of an essential element of a crime on an alternative basis permitted by the statute but not charged in the indictment.'" *Id.* (quoting *United States v. Slovacek*, 867 F.2d 842, 847 (5th Cir. 1989)).

Because neither of the Gardenhires objected to the instruction, our review is for plain error.[2] In order to show plain error, an appellant must show a

---

[1] The Gardenhires assert that the instruction allowed the jury to convict under 18 U.S.C. § 1346 for "honest services fraud," an offense not alleged in the indictment. *See* § 1346 ("For the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services.").

[2] The Government contends that Gary Gardenhire invited the district court's error by requesting the jury instruction in question and that the error is therefore either unreviewable or reviewable only for manifest injustice. *See United States v. Puig-Infante*, 19 F.3d 929, 941 (5th Cir. 1994). Because we conclude that the Gardenhires have not shown plain error, we need not address whether the error was invited.

3

No. 11-50123

forfeited error that is clear or obvious and that affects his substantial rights, "which in the ordinary case means he must demonstrate that it 'affected the outcome of the district court proceedings.'" *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). Even if the Gardenhires make such a showing, this court will only correct the error if it seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *Id.*

The Gardenhires contend primarily that the district court committed plain error under *United States v. Griffin*, 324 F.3d 330 (5th Cir. 2003). In *Griffin*, the defendants were indicted for conspiracy, bribery, money laundering, and mail fraud arising from a real estate scheme involving tax credits for low income housing. *Id.* at 337. The indictment alleged that Griffin and her co-conspirators committed mail fraud by mailing a pre-application notification for tax credits for a housing project in order to defraud various governmental entities "and to obtain money and property by false pretenses." *Id.* at 352. However, the court charged the jury that a "'scheme to defraud' included any scheme to deprive another of money, property, or of the intangible right to honest services by means of false or fraudulent pretenses, representations, or promises." *Id.* at 353. On plain error review, this court held that (1) the unissued tax credits were not "property" within the meaning of the mail fraud statute until they were issued, and (2) the court's charge constructively amended the indictment to include a basis for the fraud that was not charged in the indictment by including the intangible right to honest services language. *Id.* at 353-56. Finding plain error, this court reversed the defendants' mail fraud convictions. *Id.* at 356.

The Gardenhires' reliance on *Griffin* is misplaced. Because the court in *Griffin* concluded that the unissued tax credits were not property under the mail fraud statute, the defendants could not have been convicted without the "honest services" language, which did not appear in the indictment. In this case,

No. 11-50123

however, both the "money and property" basis and the "honest services" basis for conviction were not only available to the jury, they were inextricably intertwined. Based on the evidence in this case, the jury could not have convicted the Gardenhires of depriving Webb of honest services without also finding that they had deprived Webb of money and property. *See United States v. Jackson*, 220 F. App'x 317, 329 (5th Cir. 2007).[3] Because the jury could not have concluded that the Gardenhires deprived Webb of honest services without also finding that they deprived him of money and property, we conclude that the district court's error did not affect the Gardenhires' substantial rights.

### III

For the foregoing reasons, we conclude that the Gardenhires have not shown that the outcome of the trial would have been different if the district court had not included the "honest services" language. *See Puckett*, 556 U.S. at 135. There was no plain error. We AFFIRM.

---

[3] The Gardenhires also contend that they were prejudiced by the Government's reference in closing argument to Gardenhire's and Webb's friendship. This contention fails for the same reason that *Griffin* is inapposite. There was no basis in evidence for finding that Gary Gardenhire betrayed Webb's friendship without also finding that he deprived Webb of money and property.