UNITED STATES of America, Appellee,

v.

Steven M. GARDNER, Appellant.

UNITED STATES of America, Appellee,

v.

Edward L. MORRIS, Appellant.

Nos. 94–3925, 94–3927.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1995.

Decided Aug. 28, 1995.

Michael Dwyer, Federal Public Defender's Office (argued), St. Louis, MO, for Gardner.

Samuel C. Ebling (argued), St. Louis, MO, for Morris.

Michael W. Reap, Assistant U.S. Attorney (argued), St. Louis, MO, Mary Jane Lyle (on the brief), for appellee.

Before WOLLMAN and MURPHY, Circuit Judges, and BENNETT,* District Judge.

* The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa, sitting by designation.

WOLLMAN, Circuit Judge.

Steven M. Gardner and Edward L. Morris appeal from the district court's [1] denial of their motions to dismiss on double jeopardy grounds an indictment alleging conspiracy to defraud and fraud. We affirm.

## I.

In the mid–1980s, Germania Bank, a St. Louis area savings and loan association, began to suffer losses on its real estate loan portfolio. To increase its regulatory capital, Germania sought approval for a $10,000,000 public offering of uninsured, subordinated capital notes, commonly referred to as Schnotes, and a private offering of $7,500,000 of convertible subordinated debentures to Laclede Development Company.

Sales of the Schnotes began in October 1987, following governmental approval. By February 1988, approximately $8,500,000 worth of Schnotes had been sold, and on December 23, 1987, Laclede purchased $5,800,000 of the debentures. Germania's financial condition failed to improve, however, and in June 1990, Germania was placed in conservatorship by the Resolution Trust Corporation.

Gardner and Morris were indicted, along with Joseph Mason, by a federal grand jury in the Eastern District of Missouri on November 19, 1992. The indictment charges them with one count of conspiracy in violation of 18 U.S.C. § 371, three counts of false entries in the books of a federally insured lending institution in violation of 18 U.S.C. § 1006, one count of a false statement to a department or agency of the United States in violation of 18 U.S.C. § 1001, and thirteen counts of mail fraud in violation of 18 U.S.C. § 1341. All of the counts arose in connection with the operation of Germania Bank and the sale of the debt instruments. The indictment alleges that in connection with the proposed offerings, Morris, Gardner, Mason, and Jim-mie W. New,[2] all officers of Germania, reviewed Germania's portfolio and decided not to book losses that would have required an addition of approximately nine million dollars in loan loss reserves and would have also required posting a loss for the third quarter of 1987, a consideration relevant to regulatory approval and important to the marketing of the Schnotes. The losses were also allegedly concealed from Germania's accountants and attorneys.

The same day on which the Missouri indictment was returned, Gardner and Morris were indicted by a federal grand jury in the Southern District of Illinois. The Illinois indictment alleged two counts of mail fraud in violation of 18 U.S.C. § 1341 and one count of wire fraud in violation of 18 U.S.C. § 1343, all arising out of the operation of Germania. The charges in both indictments relate generally to the intentional underfunding of Germania's loss loan reserves and the concealment of this fact from regulators and investors. The two indictments allege the same general course of fraudulent dealings in the same time frame and general geographic area, although the specific counts themselves are distinguishable.

At a hearing held in the Southern District of Illinois in February 1993, Gardner and Morris sought transfer of the Illinois proceeding to Missouri under Fed.R.Crim.P. 21(b). The motion for transfer and subsequent motion for reconsideration were denied. Gardner and Morris were subsequently found guilty of the charges in Illinois in November 1993, and were sentenced to 46 month concurrent sentences on all counts and fines of $9,999 each. The judgments and sentences are currently on appeal in the Seventh Circuit. Following their convictions in Illinois, Gardner and Morris moved to dismiss the indictment in Missouri on double jeopardy grounds, and it is from the denial of that motion that this appeal springs.

---

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri, adopting the Report and Recommendation of the Honorable Catherine D. Perry, then United States Magistrate Judge, now United States District Judge for the Eastern District of Missouri.

2. New pleaded guilty in both the Southern District of Illinois and the Eastern district of Missouri and testified for the government in the Illinois trial.

## II.

■ "[T]he district court's denial of a motion to dismiss an indictment on the grounds of double jeopardy is reviewed *de novo.*" *United States v. Bennett,* 44 F.3d 1364, 1368 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2279, 132 L.Ed.2d 282, *and cert. denied,* —— U.S. ——, 115 S.Ct. 2585, 132 L.Ed.2d 833 (1995). Once a defendant fashions a non-frivolous double jeopardy claim, the government must show by a preponderance that the separate indictments charge separate offenses. *Id.; see United States v. Okolie,* 3 F.3d 287, 289 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1203, 127 L.Ed.2d 551 (1994).

■ Gardner and Morris both contend that the alleged scheme is one continuous course of conduct for which they cannot be subjected to multiple prosecutions. The Illinois counts deal with two specific instances of mail fraud on January 18 and February 7–8, 1988, as well as one count of various wire fraud offenses from January 14 through the end of February 1988. The Missouri counts allege a conspiracy that lasted from September 26, 1987, through July 26, 1988. The specific counts of false entries, mail fraud, and false statement in the Missouri indictment are also alleged to have taken place at various times within this time frame.

■ There can be no doubt that the charged offenses arise from the same set of circumstances and are predicated on the same-transactional theme, but that is not our guide in determining the implications of double jeopardy. *See Garrett v. United States,* 471 U.S. 773, 790, 105 S.Ct. 2407, 2417, 85 L.Ed.2d 764 (1985) (rejecting same-transaction test). Rather, the inquiry runs to whether they constitute the "same offense" or require different factual predicates to conviction. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The conspiracy, false entry, and false statement counts are all plainly separate statutory offenses involving distinct elements, and thus do not pose any double jeopardy problem. *See United States v. Dixon,* —— U.S. ——, ——, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993). This holds true despite the fact that they arose out of the same course of conduct as the Illinois mail and wire fraud charges.

■ The mail fraud charges in the Missouri indictment likewise do not transgress the dictates of double jeopardy jurisprudence. " 'The test is whether the individual acts are prohibited, or the course of action which they constitute.' " *Blockburger,* 284 U.S. at 302, 52 S.Ct. at 181 (quoting Wharton's Criminal Law (11th Ed.) § 34 n. 3). If the individual acts are the target of the law, then separate indictments and prosecutions are permissible, even if the acts together constitute a common course of action. *Id.; see Thomas v. Kerby,* 44 F.3d 884, 887 (10th Cir.1995) (where "the legislature provide[s] for multiple offenses under the circumstances, there is no premise for a double jeopardy claim").

So it is with the mail fraud statute. Under 18 U.S.C. § 1341, it is not the plan or scheme that is punished, but rather each individual use of the mails in furtherance of that scheme. *United States v. Calvert,* 523 F.2d 895, 914 (8th Cir.1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976); *United States v. Alanis,* 945 F.2d 1032, 1036 (8th Cir.1991), *cert. denied,* 502 U.S. 1045, 112 S.Ct. 906, 116 L.Ed.2d 807 (1992); *United States v. Ledesma,* 632 F.2d 670, 679 (7th Cir.), *cert. denied,* 449 U.S. 998, 101 S.Ct. 539, 66 L.Ed.2d 296 (1980); *see Cochran v. United States,* 41 F.2d 193, 197 (8th Cir.1930) ("The use of the post office establishment in the execution of the alleged scheme to obtain money by false pretenses is the gist of the offense which the statute denounces, and not the scheme to defraud."). Accordingly, the separate instances of mailings in furtherance of the alleged fraud in connection with Germania are separately prosecutable despite the presence of only one general scheme. *Cf. United States v. Easley,* 927 F.2d 1442, 1451–52 (8th Cir.) (successive prosecutions involving mailings of obscene materials at different times are legally distinct), *cert. denied,* 502 U.S. 868, 112 S.Ct. 199, 116 L.Ed.2d 158 (1991); *United States v. Gallardo,* 915 F.2d 149, 151 (5th Cir.1990) (per curiam) (multiple convictions for temporally indistinct mailings of child pornography affirmed through com-

parison to mail fraud statute), *cert. denied,* 498 U.S. 1038, 111 S.Ct. 707, 112 L.Ed.2d 696 (1991). Further, the charges simply do not constitute the "same offense" because each charge of mail fraud "requires proof of an additional fact which the other does not," namely the use of the mails specified for each particular count. *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182. Indeed, this case is paralleled by *Ex parte Henry,* 123 U.S. 372, 8 S.Ct. 142, 31 L.Ed. 174 (1887), in which the Supreme Court found no bar to a second indictment based on violations of the then-applicable mail fraud statute despite a previous conviction dealing with other transgressions of the statute. *Id.* at 373–74, 8 S.Ct. at 142–43. The statute at that time limited the number of counts chargeable in an indictment arising from the same six month period, but another indictment alleging different counts from the same time frame was deemed permissible. *See id.* We are thus compelled to conclude that the Missouri prosecution of the separate mail fraud counts does not violate double jeopardy.

■ Gardner and Morris assert, however, that a fundamental problem exists with this reasoning as applied to their case because if additional charges were to be levied in connection with an allegedly singular scheme, they should have been so levied in the initial proceeding. These concerns are misplaced, for there is "no authority whatsoever" for the proposition that the government must prosecute separate offenses together. *Dixon,* — U.S. at —, 113 S.Ct. at 2860; *see Ex parte Henry,* 123 U.S. at 374–75, 8 S.Ct. at 142–43 (allowing multiple prosecutions when statute precluded alleging more counts in the initial indictment); *see also Bennett,* 44 F.3d at 1372 ("[I]f two offenses are not the same for purposes of barring multiple punishment, they necessarily will not be the same for purposes of barring successive prosecutions."). *But cf. Department of Revenue of Montana v. Kurth Ranch,* — U.S. —, —, 114 S.Ct. 1937, 1945, 128 L.Ed.2d 767 (1994) (no later penalty allowed for the same offense). For the same reasons that the conspiracy, false statement, and other dissimilar charges need not be brought in the first proceeding, so, too, the Constitution does not require that additional non-multi-

plicitous mail fraud charges be brought all in one proceeding.

## III.

■ Gardner also asserts that the consideration of the other incidents of the overall criminal scheme for sentencing purposes in the Illinois case precludes the subsequent prosecution of and punishment for that conduct. The Supreme Court recently rejected this very argument in *Witte v. United States,* — U.S. —, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995). "[W]here the legislature has authorized such a particular punishment range for a given crime, the resulting sentence within that range constitutes punishment only for the offense of conviction...." *Witte,* — U.S. at —, 115 S.Ct. at 2208; *see id.* at —, 115 S.Ct. at 2205 (noting that a defendant "is punished, for double jeopardy purposes, only for the offense of which the defendant is convicted"); *see also Williams v. Oklahoma,* 358 U.S. 576, 584–86, 79 S.Ct. 421, 426–27, 3 L.Ed.2d 516 (1959). "[W]hile the Guidelines certainly envision that sentences for multiple offenses arising out of the same criminal activity *ordinarily* will be imposed together, they also explicitly contemplate the possibility of separate prosecutions involving the same or overlapping 'relevant conduct.'" *Witte,* — U.S. at —, 115 S.Ct. at 2208 (emphasis in original); *see United States v. Bellrichard,* 62 F.3d 1046, 1051–52 (8th Cir.1995).

Gardner asserts that *Witte* is factually distinguishable from his case because he is charged with essentially the same course of conduct in both indictments, whereas in *Witte* the defendant engaged in two separate criminal ventures. Morris makes a similar argument in insisting that the conduct involved constitutes a single offense for purposes of the double jeopardy inquiry and the sentencing function. We conclude that our earlier discussion sufficiently rebuts these contentions, however, and we find *Witte* indistinguishable as it relates to these claims. Protection from excessive punishment in this scenario lies in section 5G1.3 of the Sentencing Guidelines, which permits the district court to coordinate and approximate the sen-

tences as if all the offenses had been brought in the same proceeding, rather than in the constitutional proscription against double jeopardy. *See* U.S.S.G. § 5G1.3, comment. (nn. 2–3); *Witte,* —— U.S. at ——, 115 S.Ct. at 2208; *see also United States v. O'Dell,* 713 F.2d 421, 422 (8th Cir.1983) (per curiam) (inviting district court to reconsider propriety of consecutive sentences for section 1341 offenses involving a single fraudulent scheme).

The judgment is affirmed.