900 F.Supp. 1167 (1995)
UNITED STATES of America, Plaintiff,
v.
1181 WALDORF DRIVE, ST. LOUIS, MISSOURI, Real Property Located thereon, etc., Defendant,
Kenneth Wilderman and Robert Wilderman, Claimants.
No. 4:94CV02042 GFG.
United States District Court, E.D. Missouri, Eastern Division.
September 22, 1995.
*1168 Julia M. Wright, Office of U.S. Attorney, St. Louis, MO, for the U.S.
Raymond A. Bruntrager, Sr., President, Bruntrager and Billings, St. Louis, MO, for Robert Wilderman.
Raymond A. Bruntrager, Sr., President, Bruntrager and Billings, St. Louis, MO, Gerard A. Nester, Associate, St. Louis, MO, for Kenneth W. Wilderman.
Suzanne D. Nelson, St. Louis County Counselor Office, St. Louis, MO, for St. Louis County, Missouri.

MEMORANDUM
GUNN, District Judge.
This matter is before the Court following a bench trial held on August 2, 1995.
On October 20, 1994, the United States government filed this forfeiture action against the defendant property pursuant to 18 U.S.C. § 2254(a)(2). On November 14, 1994, Robert and Kenneth Wilderman, brothers, filed claims to the property. On December 2, 1994, the Collector of Revenue for St. Louis County, Missouri, also filed a claim to the property to enforce its tax lien on said property.

I. FINDINGS OF FACT
1. Kenneth Wilderman plead guilty to one count of knowingly receiving through interstate commerce materials containing visual depictions of minors engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2) and was sentenced on September 9, 1994, to the custody of the United States Bureau of Prisons for a term of 72 months. (Exhs. KW-A, KW-B.) Upon release from imprisonment, Kenneth Wilderman will be on supervised release for a term of three (3) years. (Exh. KW-B.) Additionally, Kenneth Wilderman was ordered to pay a fine of $6,000. (Id.)
2. The materials which Kenneth Wilderman plead guilty to receiving are described in the indictment as one videotape containing the films entitled Advanced Young Sex, Children's Sex Party, School Boys' Sex Orgies, Lolita Mix, and Teaching Lolita Sex. (Exh. KW-A at 1.) Such materials are before this Court and comprise the government's Exhibit 19. (Exhs. 5, 19.)
3. Kenneth and Robert Wilderman own the defendant property, 1181 Waldorf Drive, *1169 St. Louis, Missouri, as joint tenants with the right of survivorship. (Stip.)
4. The value of the defendant property is approximately $50,000. (Stip.)
5. From 1973 until 1992, Kenneth Wilderman resided at the defendant property, 1181 Waldorf Drive, St. Louis, Missouri, with his mother. (K. Wilderman Dep. at 12-13.) In July of 1992, after his mother moved to a nursing home, Kenneth Wilderman lived alone at the property until his arrest in 1993. (Id.; R. at 176-77.) Robert Wilderman never resided at 1181 Waldorf Drive. (R. at 181.)
6. The back yard of defendant property is about sixty (60) yards away from Our Lady of Good Counsel church and grade school. (R. at 25.)
7. On December 14, 1993, pursuant to a search warrant, the defendant property was searched by local law enforcement officials and federal postal inspectors. (Exh. 4; R. at 33.) The government confiscated thousands of pieces of various adult and child pornography, including video tapes and photographs. (Exhs. 6, 7, 7A, 12, 14B-C, 17A-J; Stip., R. at 38.)
8. Becky Powers is the postal inspector who was in charge of the criminal investigation which resulted in the aforementioned 1993 arrest of Kenneth Wilderman. (R. at 22-23.) She was present at the defendant property on December 14, 1993 during the execution of the search warrant. (R. at 33.) Kenneth Wilderman was also present during the search. (R. at 33.)
9. Powers testified that she and Kenneth Wilderman sat in the living room together. (R. at 33.) She stated that she read him his rights and that he understood his rights and agreed to waive them. (R. at 33-34.) Powers testified that Kenneth Wilderman then confessed to Powers that he had been collecting child pornography for more than thirty (30) years. (R. at 35-36.) Powers testified that Kenneth Wilderman also told her that for the past two years he had been sending all of his film to be developed to Dale Laboratories in Florida. (R. at 36.) He said that he spent between $600 and $700 every month for film development. (R. at 36-37.) The Court finds the testimony of Becky Powers to be credible.
10. The majority of the pornographic materials were discovered in Kenneth Wilderman's bedroom and the basement of the property. (R. at 39.) Some pieces of pornography were found in the dining room. (Id. at 40.)
11. The materials found at the defendant property and comprising the government's Exhibits 7, 7A, and 12 are visual depictions involving the use of minors engaging in sexually explicit conduct. (Exhs. 7, 7A, and 12; Stip., R. at 38.) The materials include magazines, photographs, posters and film which depict children, clearly under the age of 18: (1) engaged in sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, with other minor children and adults of the same sex and the opposite sex; (2) masturbating; and (3) exhibiting their genitals or pubic area. (Exhs. 7, 7A, 12.)
12. The confiscated materials described above include numerous magazines. (Exhs. 7, 7A). The magazines entitled Bambina: Sex, Lolita Sex 2, Linda Patty, Lolita Sex 3, Sweet Linda, and Sweet Patty all have markings indicating that they were published or made in Denmark. (Id.) The magazines Nudist Moppets and Little Lovers bear markings indicating that they were published in Studio City, California and in Hollywood, California respectively. (Id.) The magazines Lolita Love 1 and Lolita Love 3 bear markings indicating publication in Stockholm, Sweden. (Id.) The markings of another publication entitled A Study of Phallic Erection in Teen-Age Boys denotes publication in New York, New York. (Id.)
13. The confiscated materials described above include two movie reels packaged in boxes marked "Diverse Industries, Inc., Van Nuys, CA." (Id.) Many photographs of different sizes of a neighborhood child, nine years old at the time, wearing a Brownies uniform sitting on a sofa at the defendant property were also confiscated; she is not wearing any underwear and her pubic area is exposed. (R. at 55-57; Exhs. 7, 12, 16A.) This picture was developed from film sent to Dale Laboratories in Hollywood, Florida by *1170 Kenneth Wilderman. (Exh. 7.) Many of the negatives from the role of film containing pictures of this neighborhood girl in her uniform on the sofa are in plastic jackets stamped with "DALE LABORATORIES, Hollywood, Florida." (Id.) The plastic jackets in turn are in a paper envelope also printed with the name Dale Laboratories and an address in Hollywood, Florida. (Id.) A plastic envelope sent to Kenneth Wilderman through the U.S. Mail from Dale Laboratories, postmarked December 8, 1993, was also found at the defendant property. (Id.)
14. Robert Wilderman visited his mother at 1181 Waldorf Drive at least once a week until she entered a nursing home in July of 1992. (R. at 177; K. Wilderman Dep. at 13.) He would stay for a few hours, and the visits would take place in the living room. (R. at 177.) He sometimes walked to the kitchen through the dining room during his visits, and he also sometimes went through the porch to the back yard. (R. at 178, 180.) He occasionally entered his mother's bedroom. (R. at 178.) He rarely walked into Kenneth Wilderman's bedroom or the basement. (R. at 179-80.) After his mother moved into the nursing home, Robert Wilderman visited the defendant property "maybe once or twice." (R. at 202-203; K. Wilderman Dep. at 15.)
15. Robert Wilderman testified that he never saw any evidence that Kenneth Wilderman possessed, collected, or ordered through the mail any child pornography. (R. at 180-81, 203.)
16. Kenneth Wilderman had a checking account at Landmark Bank in St. Louis, Missouri. (Exh. 2.) Kenneth Wilderman made his brother Robert Wilderman a cosigner on his checking account in March of 1988. Id. Robert Wilderman did not view any bank statements or canceled checks relating to the account, nor did he ever balance the checkbook. (K. Wilderman Dep. at 24-25.) Robert Wilderman did not think of the account as his and did not write any checks on the account until after his brother was arrested in December of 1993. (R. at 182.)
17. Powers testified that, as far as she knows, Robert Wilderman was never involved in any way with his brother's procurement of child pornography. (R. at 124-25.) She noted only that Robert Wilderman's name was printed on Kenneth Wilderman's checks. (Id.)
18. In November of 1971, Kenneth Wilderman was charged with child molestation but plead guilty to one count of lewd and lascivious behavior, a misdemeanor. (Exh. 3; R. at 197.) Robert Wilderman posted bond for his brother. (Id.) Robert Wilderman knew of the charge and the guilty plea. (R. at 197.)
19. Robert Wilderman admitted that his mother complained to him once about Kenneth Wilderman keeping "dirty pictures" in the house. (R. at 198-99.) He explained that he did not think that "dirty pictures" meant child pornography. (Id.)
20. Sister Marcella Polizzi of the Convent Our Lady of Good Counsel visited the defendant property about once a week on Thursdays for many years to take communion to Kenneth Wilderman's mother until Dorothy Wilderman moved into a nursing home in 1992. (R. at 152-53.) The two visited in the living room for five or ten minutes. (R. at 154, 156.) Sister Polizzi could see into the dining room and on occasion she went into the kitchen. (R. at 154-55.) Sister Polizzi never saw anything in the house of a pornographic nature. (R. at 155.)
21. Until July of 1992, Colleen Hoette, claimant's niece, visited the defendant property numerous times, as often as once or twice a month, and on one or two occasions she brought her children. (Stip., R. at 209; K. Wilderman Dep. at 14.) She never saw evidence of pornographic material within the house, including in the basement. (Stip., R. at 209.)
22. The government has agreed to take any interest in the defendant property subject to the entire tax lien held by the Collector of Revenue for St. Louis County, Missouri, in the amount of $733.58 plus interest and penalties. (Stip.)
23. The parties have agreed that if the defendant property is forfeited to government subject to Robert Wilderman's interest in that property, then the property will be sold and the proceeds divided equally between *1171 the government and Robert Wilderman. (Stip.)

II. CONCLUSIONS OF LAW
24. The Protection of Children Against Sexual Exploitation Act, 18 U.S.C. §§ 2251-2259, punishes criminally "any person who knowingly receives, or distributes any visual depiction that has been mailed or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer ... if (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct." 18 U.S.C. § 2252(a)(2), (b) (original version at Pub.L. No. 95-225, § 2(a), 92 Stat. 7 (1978)).
25. The Act also punishes criminally any person who "knowingly possesses 3 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate commerce or foreign commerce ... if (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct." 18 U.S.C. § 2252(a)(4)(B), (b).
26. A "minor" is defined as "any person under the age of eighteen years." 18 U.S.C. § 2256(1).
27. "Sexually explicit conduct" is defined to include: "actual or simulated  (A) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (B) bestiality; (C) masturbation; (D) sadistic or masochistic abuse; or (E) lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2).
28. "`[V]isual depiction' includes undeveloped film and videotape." 18 U.S.C. § 2256(5).
29. Under the Protection of Children Against Sexual Exploitation Act, certain property is subject to civil forfeiture by the government. 18 U.S.C. § 2254. Such property includes "any property, real or personal, used in the commission of an offense under this chapter involving a visual depiction described in section 2251, 2251A, or 2252 of this chapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without knowledge or consent of that owner." 18 U.S.C. § 2254(a)(2).
30. Section 2254(d) makes many of the provisions of the customs laws relating forfeiture, found in the Tariff Act of 1930, 19 U.S.C. §§ 1581-1631, applicable to forfeitures brought pursuant to § 2254. One such provision, 19 U.S.C. § 1615, outlines the burden of proof in forfeiture proceedings. Section 1615 provides in relevant part:
In all suits or actions ... brought for the forfeiture of any [property seized] ... where the property is claimed by any person, the burden of proof shall lie upon such claimant ... Provided, That probable cause shall be first shown for the institution of such suit or action, to be judged of by the court....
19 U.S.C. § 1615.
31. Under the standard outlined in 19 U.S.C. § 1615, the government bears the initial burden of proving probable cause to connect the property involved in a forfeiture proceeding to criminal wrongdoing. United States v. Ninety One Thousand Nine Hundred Sixty Dollars ($91,960.00), 897 F.2d 1457, 1462 (8th Cir.1990). The necessary level of proof is greater than mere suspicion but less than prima facie proof. Id. "Once probable cause is established, `the burden shifts to the claimant to demonstrate that by a preponderance of the evidence that the property is not subject to forfeiture, or that a defense to forfeiture applies.'" Id. (quoting One Blue 1977 AMC Jeep CJ-5 v. United States, 783 F.2d 759, 761 (8th Cir.1986)).
32. Section 1615 also outlines a few special "rules of proof" which apply when the government is attempting to show probable cause. 19 U.S.C. § 1615(1)-(3). One such rule is as follows: "Marks, labels, brands, or stamps, indicative of foreign origin, upon or accompanying mechandise [sic] or containers *1172 of merchandise, shall be prima facie evidence of the foreign origin of such merchandise." 19 U.S.C. § 1615(2).
33. In this case, the government has met its burden to show probable cause regarding Kenneth Wilderman. Probable cause exists to believe that Kenneth Wilderman knowingly possessed three or more magazines, film, and other matter containing visual depictions of minors engaging in sexually explicit conduct and having been shipped in interstate or foreign commerce in violation of 18 U.S.C. § 2252(a)(4). See infra ¶¶ 7-13, 25, 32. Probable cause exists to believe that Kenneth Wilderman knowingly received visual depictions of minors engaging in sexually explicit conduct that were shipped in interstate commerce in violation of 18 U.S.C. § 2252(a)(2). See infra ¶¶ 7-13, 24, 32. Probable cause exists the defendant property was used in the commission of Kenneth Wilderman's offenses; the defendant property was used to store the child pornography which Kenneth Wilderman received and possessed in violation of federal law. The house was a veritable cesspool of execrable examples of child exploitation. The house served as a warehouse for materials acquired to satisfy Kenneth Wilderman's facinorous pastime. See infra ¶¶ 7-13, 24, 25, 32. Cf. United States v. One Parcel of Property, 964 F.2d 814, 816 (8th Cir.1992), rev'd on other grounds sub nom., Austin v. United States, ___ U.S. ___, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (storing of drugs in a house is sufficient probable case to forfeit a house under 21 U.S.C. § 881(a)(7)); United States v. Premises Known as 3639-2nd St., N.E., 869 F.2d 1093, 1096 (8th Cir.1989) (storing of drugs in a house constitutes using a house to facilitate a crime under 21 U.S.C. § 881(a)(7)).
34. The Eighth Amendment bars the imposition of an excessive fine as punishment for some offense. Austin v. United States, ___ U.S. ___, ___, 113 S.Ct. 2801, 2805, 125 L.Ed.2d 488 (1993).
35. The Double Jeopardy Clause protects against multiple punishments for the same offense. United States v. Halper, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989).
36. "[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment." Id. at 448, 109 S.Ct. at 1901.
37. The Supreme Court has determined that forfeitures under the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 881(a)(7), (c)(4), are not solely remedial but penal. Austin, ___ U.S. at ___, 113 S.Ct. at 2810. The Supreme Court looked to express provisions within § 881 outlining an "innocent owner" defense and connecting forfeiture directly to the commission of drug offenses. Id. at ___ - ___, 113 S.Ct. at 2810-11. The Supreme Court reasoned that the statute's focus on the culpability of the owner, legislative history suggesting that Congress designed the statute to deter and to punish, and its finding that forfeiture has been historically understood as punishment all prevented the Court from concluding that forfeiture under § 881 serves solely a remedial purpose. Id. at ___, 113 S.Ct. at 2812.
38. Section 2254 of the Protection of Children Against Sexual Exploitation Act is analogous to § 881 of the Comprehensive Drug Abuse Prevention and Control Act of 1970. Section 2254 also expressly provides for an "innocent owner" defense and requires a connection between the property subject to civil forfeiture and the conduct made criminal under the Act. 18 U.S.C. § 2254. In light of the focus § 2254 on the owner's guilt and the historical understanding of forfeiture as punishment, this Court cannot conclude that forfeiture under § 2254 serves solely a remedial purpose. Therefore, civil forfeiture under § 2254 is punishment.
39. Civil forfeiture proceedings under the Protection of Children Against Sexual Exploitation Act, as punishment, trigger the protections of the Fifth Amendment's Double Jeopardy Clause and the Eighth Amendment's Excessive Fines Clause.
40. In this case, the Double Jeopardy Clause prevents the forfeiture of the defendant *1173 property based on those materials which claimant Kenneth Wilderman pled guilty to receiving and which comprise the government's Exhibit 19. See infra ¶¶ 1-2. See generally United States v. Chick, 61 F.3d 682 (9th Cir.1995); United States v. Ursery, 59 F.3d 568 (6th Cir.1995); United States v. $405,089.23 in U.S. Currency, 33 F.3d 1210 (9th Cir.1994), amended on denial of reh'g, 56 F.3d 41 (9th Cir.1995).
41. However, the Double Jeopardy Clause does not bar punishment for Kenneth Wilderman's possession of other child pornography confiscated by authorities on December 14, 1993. See infra ¶¶ 7-13.
42. The Court notes that the Supreme Court has "rejected the claim that double jeopardy principles bar a later prosecution or punishment for criminal activity where that activity has been considered at sentencing for a separate crime." Witte v. United States, ___ U.S. ___, ___, 115 S.Ct. 2199, 2205, 132 L.Ed.2d 351 (1995). See also United States v. Gardner, 65 F.3d 82, 83 (8th Cir.1995). Therefore, even if the other pieces of child pornography confiscated were considered by the district court at Kenneth Wilderman's sentencing on September 9, 1994, as he contends, the Double Jeopardy Clause does not bar later civil forfeiture of the defendant property based on those pieces.
43. A forfeiture may be so disproportionate compared to the gravity of the offense that it is unconstitutionally excessive under the Excessive Fines Clause. Alexander v. United States, ___ U.S. ___, ___ - ___, 113 S.Ct. 2766, 2775-76, 125 L.Ed.2d 441 (1993); United States v. Olson, 22 F.3d 783, 786 (8th Cir.1994). The party challenging the forfeiture has the initial burden of making a prima facie showing of "`gross disproportionality.'" United States v. Alexander, 32 F.3d 1231, 1235 (8th Cir.1994) (quoting United States v. Sarbello, 985 F.2d 716, 724 (3d Cir.1993)).
44. A court's proportionality analysis involves a careful evaluation of the specific facts of a particular case. United States v. Bieri, 21 F.3d 819, 824 (8th Cir.), cert. denied, ___ U.S. ____, 115 S.Ct. 208, 130 L.Ed.2d 138 (1994). A court must weigh the "`the seriousness of the offense, including the moral gravity of the crime measured in terms of the magnitude and nature of its harmful reach,'" against the severity of the sanction. United States v. Alexander, 32 F.3d at 1236 (quoting United States v. Sarbello, 985 F.2d at 724). The Court has seen the collection of pictures and film which Kenneth Wilderman stored in his house and the Court cannot conceive of crimes so ruinous and rank. Kenneth Wilderman's crimes exploited the most vulnerable members of society in the basest of ways. The loss of his home weighs little compared to the harmful reach of his moral depravity.
45. In its proportionality analysis, a court must also assess the extent of criminal activity associated with the property. United States v. One Parcel of Real Property, 27 F.3d 327, 331 (8th Cir.1994). Kenneth Wilderman could not have possessed so much child pornography for so long without a place to store it. He used his house on Waldorf Drive to store the pornography. See infra ¶¶ 7-13. Given the close association between his house and his criminal activities, forfeiture of his entire interest in the house is not excessive.
46. Other considerations include "the fact that the property was a residence, [and] the effect of forfeiture on innocent occupants of the residence, including children." One Parcel of Real Property, 27 F.3d at 331. In this case, there are no innocent occupants. From 1992 until his incarceration, Kenneth Wilderman lived alone. See infra ¶ 5. Currently, the house stands empty.
47. A final inquiry involves comparing the proposed civil forfeiture with the sentences imposed for commission of the underlying criminal conduct used to support the forfeiture action. See generally United States v. Premises Known as RR # 1, 14 F.3d 864, 875-76 (3d Cir.1994), cited with approval in United States v. One Parcel of Real Property, 27 F.3d at 330-31. In this case, the defendant property is worth $50,000 with Kenneth Wilderman's share being worth $25,000. See infra ¶ 4. Under the Sentencing Guidelines, the range of fines for violating 18 U.S.C. 2252(a)(2) is from $4,000 to *1174 $40,000. §§ 2G2.2(a), 5E1.2. The range of fines for violating 18 U.S.C. 2252(a)(4) is from $3,000 to $30,000. §§ 2G2.4(a), 5E1.2. The loss to Kenneth Wilderman of an interest worth $25,000 in the defendant property falls well within these ranges.[1]
48. Kenneth Wilderman has not made a prima facie showing of "gross disproportionality," and therefore, the Court finds that the forfeiture in this case does not violate the Eighth Amendment's Excessive Fines Clause.
49. Kenneth Wilderman has not met his burden: he has not shown by a preponderance of the evidence that the defendant property is not subject to forfeiture or that a defense to forfeiture applies.
50. The government has not met its burden to show probable cause regarding Robert Wilderman. Probable cause does not exist to believe that Robert Wilderman knew of the criminal conduct associated with the defendant property. The government presented evidence showing that Robert Wilderman: visited the defendant property every week for about ten years; was a cosigner on his brother's checking account; knew that 25 years ago his brother was charged with child molestation but plead guilty to one count of lewd and lascivious behavior, a misdemeanor; and admitted that his mother complained to him once that his brother kept "dirty pictures" in the house. See infra ¶¶ 14, 16-19. He also was eager to lay claim and did obtain Kenneth's substantial collection of adult pornographic trash. It would seem that Robert is of the same ilk as his brother with regard to adult pornographic materials. And while his libidinous lusts for adult material are apparent, that does not transmogrify to child exploitation, although a suspicion exists. But conjecture alone does not provide ground for forfeiture of Robert's interest in the property. This evidence supports only a mere suspicion that Robert Wilderman was aware that his brother stored child pornography at their house and does not rise to the level of probable cause.
51. Based upon the above Findings and Conclusions, the defendant property is condemned and forfeited to the United States subject to the entire tax lien held by the Collector of Revenue for St. Louis County, Missouri, in the amount of $733.58 plus interest and penalties, and subject to Robert Wilderman's interest in the property. The defendant property will be sold and the proceeds divided equally between the government and Robert Wilderman.
Therefore, the Court will enter judgment in favor of the government, Robert Wilderman, and the Collector of Revenue for St. Louis County, Missouri and against the defendant property. The Court will also enter judgment against Kenneth Wilderman and deny his claim.
NOTES
[1] The Court notes that these ranges are lower than sentences which could be imposed on Kenneth Wilderman as they are calculated according to the base offense levels. The base offense levels would in all likelihood be increased under special provisions of the Guidelines; this in turn would dictate higher ranges of possible fines. §§ 2G2.2(b), 2G2.4(b).