**UNITED STATES of America,**
**Plaintiff,**

v.

**1. Arvin WEISS, and 2. Jesus Guevara, Defendants.**

**Criminal Case No. 05–CR–179–B.**

United States District Court,
D. Colorado.

Jan. 4, 2007.

Linda S. Kaufman, United States Attorney's Office, Denver, CO, for Plaintiff.

Richard Kent Kornfeld, Recht & Kornfeld, PC, Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

This Order addresses motions by defendants Arvin Weiss and Jesus Guevara (referred to collectively herein as "defendants") in the Government's case against them for wire fraud, mail fraud and witness tampering in relation to a scheme to arrange fraudulent home mortgages. Defendants' first motion (Docket # 77) seeks to bar the Government from using evidence related to 32 properties not identified in the Grand Jury Indictment as substantive evidence of wire fraud and mail fraud. Defendants' second motion (Docket # 149) seeks dismissal of the mail fraud charges for failure to state an essential element of the offense. Based on hearings November 3, 2006 and December 22, 2006, for the reasons stated below defendants'

motion to bar the Government from using evidence of the 32 properties is DENIED and defendants' motion to dismiss is DENIED, in part and GRANTED, in part.

## I. BACKGROUND

The Grand Jury indicted defendants on April 20, 2005 on multiple counts of mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, and jury tampering, 18 U.S.C. § 1512(b)(3). According to the Indictment, the defendants organized a scheme to obtain mortgage loans for low-income, unsophisticated Hispanic homebuyers through a housing subsidy program sponsored by the United States Department of Housing and Urban Development ("HUD"). Defendants purchased homes, made modest improvements, and resold the homes at a profit to the purchasers. Defendants worked with the buyers to obtain HUD subsidized loans for which they were not otherwise eligible. Defendants provided the lenders with false information about the buyers, provided the buyers' down payment money in violation of HUD rules and provided false social security numbers and other identification for the purchasers. The Indictment lists nine properties that were the subject of this scheme.

The Government intends to introduce at trial evidence of transactions related to 32 properties ("the additional properties") not mentioned in the Indictment as substantive evidence of the defendants' alleged scheme and their involvement in it. The defendants filed a motion for a bill of particulars (Docket # 77) April 20, 2006 arguing that the Indictment provided insufficient detail on their specific acts which constitute the charges alleged in the Indictment. At a hearing November 3, 2006, the defendants clarified that they have sufficient information on the nine properties listed in the Indictment, but that use of the

additional properties to show their involvement in the scheme broadens the charges against them beyond those contained in the Indictment, and potentially subjects them to double jeopardy. I heard argument on this motion November 3, 2006, and requested additional briefing from both parties on the double jeopardy issue. Based on the defense counsel's statements at the hearing, and on the additional briefs, I construe this motion for a bill of particulars as a motion to bar the Government's use of evidence of the additional properties as substantive evidence. [Defendants do not contest that the Government may use these properties as "other acts" evidence under Fed.R.Evid. 404(b).]

Separately, on November 1, 2006 defendants filed a motion to dismiss the 12 counts of mail fraud as being insufficiently related to the underlying scheme. This motion was the subject of a hearing December 22, 2006. This Order addresses both motions.

## II. ANALYSIS

### A. Motion for Bill of Particulars and Double Jeopardy (Docket # 77)

The Government proposes to use transactions related to the additional properties as substantive evidence of the scheme element in the charges for mail fraud and wire fraud. The defendants argue that this impermissibly expands the scope of the Indictment, violating their fundamental constitutional protections and potentially subjecting them to double jeopardy.

█ It is an axiom of constitutional law that a defendant may only be tried on charges laid out in a grand jury indictment. *Russell v. U.S.* 369 U.S. 749, 770–771, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). This protection is rooted in the Fifth Amendment right of grand jury indictment and the Sixth Amendment guarantee of

notice to a defendant of the charges filed against him. *U.S.v. Hien Van Tieu,* 279 F.3d 917, 921 (10th Cir.2002). *See also Hunter v. New Mexico,* 916 F.2d 595, 598 & n. 5 (10th Cir.1990).

■■■ These guarantees serve several purposes. First, allowing the prosecutor to expand the charges against a defendant raises the possibility of conviction on an offense not found or charged by a Grand Jury, placing "the rights of the citizen . . . at the mercy or control of the court or prosecuting attorney." *U.S. v. Radetsky,* 535 F.2d 556, 562 (10th Cir.1976) *overruled in part on other grounds by U.S. v. Daily,* 921 F.2d 994, 1004 & n. 11 (10th Cir.1990). Second, limiting prosecution to the specific charges of an indictment gives the defendant notice of what charges "he must be prepared to meet." *Id.* Third, the indictment shows "to what extent (the defendant) may plead a former acquittal or conviction as a bar to a further prosecution for the same cause." *Id.See also U.S. v. Miller,* 471 U.S. 130, 135, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985) (Prejudice at trial from surprise of new evidence and pleading the indictment as a bar to future prosecutions are "among the important concerns underlying the requirement that criminal charges be set out in an indictment.")

■■■ Defendants challenge the Government's use of the additional properties to broaden the Indictment under theories both of "constructive amendment" and "material variance." "An indictment is constructively amended if the evidence presented at trial, together with the jury instructions, raises the possibility that the defendant was convicted of an offense other than that charged in the indictment." *Hunter,* 916 F.2d at 599. A variance "occurs when the charging terms are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *Id.* at 598. Variances are "fatal only when the defendant is prejudiced in his defense because he cannot anticipate from the indictment what evidence will be presented against him or is exposed to the risk of double jeopardy." *Id.* at 599. Under either theory the evidence of additional properties is impermissible if it allows the jury to convict on a crime not charged in the indictment, if it subjects the defendants to prejudice at trial due to inability to anticipate evidence, or if it subjects defendants to double jeopardy.

■■■ In this case, proving violation of mail fraud requires satisfying two distinct elements: "(1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the United States mails for the purpose of executing the scheme." *Tal v. Hogan,* 453 F.3d 1244, 1263 (10 th Cir.2006). The elements of wire fraud are "very similar," but require the use of "inter-state wire, radio or television communications in furtherance of the scheme to defraud." *Id.* Under the mail and wire fraud statutes, each individual use of the mail and the wires constitutes a separate offense. *U.S. v. Gardner,* 65 F.3d 82, 85 (8th Cir.1995). *See also U.S. v. Kennedy,* 64 F.3d 1465, 1476 (10th Cir.1995) ("The statute clearly contemplates a separate mail fraud count each time the mail is used to help execute the fraudulent scheme-not each time a misrepresentation is made.") The Indictment alleges 12 specific counts of mail fraud and 5 specific counts of wire fraud in relation to 9 specific properties between June of 1998 and February of 2002. The Indictment does not specify the additional properties and so does not identify any specific wire or mail fraud transactions in relation to these properties.

Accordingly, defendants argue, using the additional properties violates two fundamental constitutional protections. First, the jury could convict defendants for wire and mail fraud violations not contained in the Indictment. This deprives them of "a basic protection which the guaranty of the intervention of a grand jury was designed to secure." *Russell*, 369 U.S. at 770, 82 S.Ct. 1038. Second, the Indictment does not provide a jeopardy bar to future charges of mail or wire fraud associated with the additional properties. The Government is free to use the additional properties as the basis of a new indictment on mail and wire fraud. (Defendants do not argue that use of this evidence will prejudice them at trial.)

▮ I find the defendants' argument regarding expansion of the Indictment unpersuasive. In a claim for mail fraud, "The Government need not allege the subordinate evidentiary facts by which it intends to prove the 'in furtherance' element of the crime charged." *U.S.v. Castor*, 558 F.2d 379, 385 (7th Cir.1977). The Government proposes to use mail and wire transactions associated with the additional properties as substantive evidence of the existence of the scheme, the first element of mail and wire fraud, not as additional instances of defendants' use of the mails or wires, the second element of mail and wire fraud. The additional properties are not additional charges, but additional evidence of the scheme alleged in the Indictment. To the extent this distinction poses a risk of jury confusion, it can be addressed through limiting jury instructions at the appropriate time.

▮ The defendants' argument regarding double jeopardy is a closer call. The double jeopardy bar on subsequent prosecutions for the same offense applies only where the two offenses do not contain "an element not contained in the other."

*U.S.v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). Where the offenses contain no separate elements, "they are the same offence and double jeopardy bars additional punishment and successive prosecution." *Id.See also U.S. v. Morris*, 247 F.3d 1080, 1083 (10th Cir. 2001). ("A person maybe prosecuted for more than one crime based on the same conduct (1) if each crime requires proof of a fact that the other does not or (2) if Congress has clearly expressed its intent to impose cumulative punishment for the same conduct under different statutory provisions.")

▮ Here, mail and wire fraud convictions require proving the existence of the scheme and specific uses of the mail and wire in furtherance of the scheme. In a later prosecution for mail or wire fraud on transactions associated with the additional properties, at least one element, the specific use of the mails and wire, would be distinct from the offenses charged here, and would therefore constitute a separate offense. This is precisely what happened in *Gardner*, where defendants were indicted for mail fraud in two overlapping cases in the Southern District of Illinois and in the Eastern District of Missouri. 65 F.3d at 84–85. After being convicted of mail fraud in Illinois, defendants moved to dismiss the mail fraud charges in Missouri on double jeopardy grounds. *Id.* at 84. The Eighth Circuit rejected the double jeopardy claim, concluding that the mail fraud charges were separate offenses because they involved different uses of the mails, even though they involved the same scheme. *Id.* at 85. Defendants contend that their situation closely parallels *Gardner*, raising the spectre of facing subsequent prosecution on charges associated with the additional properties, despite their use here as substantive evidence.

The Government offers several arguments in response. First, the Government contends that it may use evidence of the defendants' other "bad acts" outside of the strictures of Fed.R.Evid. 404(b) if these acts are direct evidence of the crime for which the defendants are charged. *U.S.v. Orr,* 864 F.2d 1505, 1510 (10th Cir.1988). However, this argument does not address the Constitutional issue defendants raise. Just because evidence is admissible under the Rules of Evidence does not mean that it passes Constitutional muster.

The Government also argues that the defendants will not face double jeopardy from use of the additional properties because "the entire record may be considered in evaluating a subsequent claim of double jeopardy." *U.S. v. Henry,* 504 F.2d 1335, 1338 (10th Cir.1974). Since transactions associated with the additional properties will be part of the record of this case, the Government avers that defendants can cite this record to argue jeopardy from these charges. This legal principle, while correct, does not protect the defendants. *Henry* states only that where an indictment is vague, the rest of the record may establish the actual basis for a conviction. *Id.* It does not state that the Government's use of evidence to support one prosecution bars it from using that evidence again to support a fresh indictment for a separate offense.

At the December 22, 2006 hearing, the Government conceded that defendants faced potential later prosecution on charges associated with mail and wire fraud linked to the additional properties, but stated that they were not entitled to a jeopardy bar on these prosecutions. This is the heart of defendants' problem: subsequent prosecution does not equal double jeopardy. *Dixon* is instructive. *Dixon* rejected an earlier double-jeopardy rule established in *Grady v. Corbin,* 495 U.S. 508, 510, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). *Grady* held that "the Double Jeopardy clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove *conduct* that constitutes an offense for which the defendant has already been prosecuted." *Id.* (Emphasis added.) *Dixon* rejected this "same-conduct" test as lacking "constitutional roots," and "inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy." *Dixon,* 509 U.S. at 704, 113 S.Ct. 2849. Defendants' double jeopardy argument necessarily rests on this rejected same-conduct test. Defendants fear that the Government may use the additional properties to charge them with specific uses of the mail and wires in a later prosecution, after using them here to prove the existence of a scheme. In light of *Dixon's* rejection of the same-conduct test and its restoration of the same-offense test, such a subsequent prosecution would not represent double jeopardy.

I therefore conclude that this evidence is admissible as substantive evidence to prove the alleged scheme, one element of the mail and wire fraud counts.

*B. Motion to Dismiss Counts 1–12 (Docket # 149)*

 Defendants move to dismiss counts 1–12, the specific counts of mail fraud, under Fed.R.Crim.P. 12(b)(2) and (3)(B), alleging that the Indictment fails to state an essential element of mail fraud, a mailing in furtherance of the scheme charged by the Government. In general, the strength of a Government's case, or the sufficiency of the Government's evidence, is an inappropriate subject for a pre-trial motion. *U.S.v. Hall,* 20 F.3d 1084, 1087 (10th Cir.1994). Where the material facts are not in dispute, a pretrial

dismissal is equivalent to "a determination that *as a matter of law,* the government is incapable of proving its case beyond a reasonable doubt." *Id.* at 1088. (Emphasis in original.) The defendants concede for the purposes of this motion that all facts alleged in the Indictment are true. I will thus grant their motion only if there is "no conceivable evidence the Government could produce at trial" that would satisfy the elements of the charges. *Castor,* 558 F.2d at 385.

The mail fraud statute criminalizes the use of the mail "for the purpose of executing" a scheme to defraud or to obtain money or property under false pretenses. 18 U.S.C. § 1341. This statute is not meant to reach all frauds, but "only those limited instances in which the use of the mails is a part of the execution of the fraud." *U.S.v. Cardall,* 885 F.2d 656, 680 (10th Cir.1989), *quoting Kann v. U.S.,* 323 U.S. 88, 95, 65 S.Ct. 148, 89 L.Ed. 88 (1944). To be actionable as mail fraud, use of the mails "need not be an essential element of the scheme, as long as it is 'incident to an essential part of the scheme' or is a 'step in the plot.'" *Id.*

Defendants' essential argument is that the mailings described in the Indictment are too remote, attenuated and unconnected to the alleged scheme to be the basis for mail fraud. The mailings in Counts 1–12 are from the county clerk and recorders' office in each county after recording of the deeds and deeds of trust. Counts 1, 3, 5, 7, 8, 10, 11 and 12 are mailings of deeds of trust to lenders; counts 2, 4, 6 and 9 are mailings of warranty deeds to the buyers. Defendants argue that the goal of the scheme, as defined by the Government, was to obtain the loan proceeds associated with each home sale. These proceeds were disbursed at closing, while the mailings in Counts 1–12 occurred after each closing and after each loan disbursement.

These routine mailings of warranty deeds and deeds of trust were irrelevant to the transactions the Government asserts were at the heart of the scheme, defendants argue, and accordingly were not in furtherance of the scheme and are not actionable as mail fraud.

The Supreme Court has on several occasions rejected mail fraud claims where the use of the mails was insufficiently related to the underlying scheme. For example, in *Kann,* the Supreme Court reversed a mail fraud conviction in a diversion scheme by corporate officers and directors. 323 U.S. at 95, 65 S.Ct. 148. The defendants received checks for services under fraudulent pretenses and cashed them at local banks. *Id.* at 90–91, 65 S.Ct. 148. The mailings at issue were from the local banks trying to collect from the issuing banks. *Id.* The Court held that the scheme was complete once the defendants got their money. "It was immaterial to them, or to any consummation of the scheme, how the bank which paid or credited the check would collect from the drawee bank" *Id.* at 94, 65 S.Ct. 148. These mailings were not "for the purpose of executing the scheme." *Id.*

Similarly, in *Parr v. United States,* 363 U.S. 370, 374–75, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960), defendants fraudulently obtained goods and services through the improper use of a credit card issued by their employer, the local school district. The Court held that the credit card company's mailings to the school district for payment, and the district's mailing of the payment, were not in execution of the scheme because the scheme reached fruition when defendants received their money. *Id.* at 393, 80 S.Ct. 1171. It was immaterial to defendants, or to their scheme, how the credit card company received its payments. *Id.*

In *U.S.v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), the defendant stole his roommate's credit card and used it at four motels over several nights. The mailings linked to this scheme were the motels' efforts to invoice the bank that issued the card, and the bank's use of the mail to attempt to collect from the card owner. *Id.* at 396–397, 94 S.Ct. 645. The Court held that these mailings could not sustain a charge of mail fraud because, as in the prior cases, the "scheme reached fruition when (defendant) checked out of the motel, and there is no indication that the success of his scheme depended in any way on which of his victims ultimately bore the loss." *Id.* at 402, 94 S.Ct. 645.

■ These cases support the general proposition that a scheme reaches fruition once a defendant fraudulently receives money, and that a mailing that occurs after a scheme reaches fruition cannot sustain mail fraud. However, the Supreme Court and Circuit Courts have recognized exceptions to this rule. Individual mailings postdating individual acts of fraud can still be incident to a scheme where the scheme is an "ongoing fraudulent venture" and each mailing furthers subsequent steps in the scheme. *Schmuck v. U.S.*, 489 U.S. 705, 711, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). In *Schmuck*, the defendant engaged in a scheme to sell used cars to after rolling back their odometers. *Id.* at 707, 109 S.Ct. 1443. The dealers in turn sold the cars to dealers customers, unaware that the recorded mileage had been altered. *Id.* This scheme involved about 150 cars over a period of about 15 years, and often involved the same retail dealers multiple times. *Id.* at 711, 109 S.Ct. 1443. The dealers mailed a title application form to the state department of transportation, a step necessary for title to properly transfer to the purchaser. *Id.* at 707, 109 S.Ct. 1443. The *Schmuck* court distinguished these mailings from those in *Kann, Parr and Maze* which were "post-fraud accounting among the potential victims" because the mailing of the title-registration forms "was an essential step in the successful passage of title to the retail purchasers." *Id.* at 714, 109 S.Ct. 1443.

The Government contends that the present case parallels *Schmuck*. Both cases involved multiple fraudulent transactions as part of an ongoing fraudulent scheme. In both cases, the mailings occurred after each fraudulent transaction, but were still in furtherance of the scheme because they furthered the ongoing venture. *Id.* at 712, 109 S.Ct. 1443. In both cases, the Government asserts, the mailings transferred title and established lien rights in individual transactions to consummate the scheme.

The defendants argue that the facts here are distinct from *Schmuck* and are more properly within the cabin of *Maze, Parr* and *Kann*. Defendants contend that the mailings here, unlike the mailings in *Schmuck*, were not critical to the scheme. In *Schmuck*, the ongoing sales of cars required transfer of title, and the mailings were necessary to the transfer of title. *Id.* at 712, 109 S.Ct. 1443. Moreover, the scheme in *Schmuck*, despite being an "ongoing fraudulent venture," reached fruition only after each individual buyer received proper title via the title-registration mailing. *Id.* at 711–712, 109 S.Ct. 1443. Here, defendants contend, the scheme was to collect funds from the lenders. This scheme reached fruition after each closing and disbursement, which occurred prior to each mailing. Additionally, unlike in *Schmuck*, the mailings from the clerk and recorders were not critical to the transfer of title. Defendants contend that it is the recording of a deed and the deed of trust, and not the receipt of a warranty deed or a deed of trust from the clerk and recorder that conveys rights to the buyer or the

lender. *See* Col.Rev.Stat. § 38–35–109. Accordingly, the scheme alleged here could continue absent the mailings, since receipt of the recorded documents did not affect defendants' receipt of funds. The mailings were thus, as in *Maze, Parr* and *Kann,* irrelevant to the defendants and not in furtherance of their scheme.

 Defendants' argument is persuasive, to a point. To the extent that the mailings in *Schmuck* furthered the scheme because they transferred legal ownership, they are distinguishable from the mailings here, since the mailing of a deed post-recordation does not convey title. Rather, in Colorado, it is the execution of the deed coupled with its delivery that effects conveyance to real property. *See generally* Col.Rev.Stat. §§ 38–30–113; 38–30–120, 38–35–101.

 However, *Schmuck* also relied, implicitly, on theories of lulling and concealment. Mailings that post-date acts of fraud may still further a scheme "if they 'were designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of defendants less likely than if no mailings had taken place.'" *U.S.v Lane,* 474 U.S. 438, 451, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986) *quoting Maze,* 414 U.S. at 403, 94 S.Ct. 645. Similarly, "mailings which facilitate concealment of a fraudulent scheme meet the 'furtherance' requirement,"even if they post-date defendant's receipt of the money. *U.S.v. Kelley,* 929 F.2d 582, 585 (10th Cir. 1991.) In *Schmuck,* the ongoing venture "depended upon (defendant's) continued harmonious relations with, and good reputation among" the car dealers. *Schmuck,* 489 U.S. at 712, 109 S.Ct. 1443. The scheme relied on Schmuck's "relationship of trust and goodwill with the retail dealers." *Id.* at 714, 109 S.Ct. 1443. The Court in *Schmuck* found it significant that the defendants used some of the same dealers consistently during his scheme. *Id.* at 711, 109 S.Ct. 1443.

 The Government here also relies here on lulling and concealment theories to link the mailings to the fraud. The Indictment alleges that the defendants used the same lender more than once, as does the list of additional properties submitted in discovery (see Government's Response to Motion for Disclosure of 404(b) evidence, Attachment 1, Docket # 89–2). The Government contends that the mailings here, like those in *Schmuck,* built ongoing good will among lenders and buyers necessary for the scheme's continued success. The mailings provided a veneer of legitimacy to the fraudulent transactions. If a lender failed to receive a deed of trust it might have aroused suspicion as to the validity of the transactions, and in this way the mailings concealed the fraudulent nature of the scheme.

Defendants respond that the Government's lulling and concealment theories are implausible. According to defendants, lenders failing to receive deeds of trust "would not have caused an investigation into whether fraudulent information had been supplied to secure the loan" but only "an inquiry as to why the deeds had not been recorded." These statements are speculation. It is equally plausible that, as the Government contends, a suspicious lender might inquire about his failure to receive deeds of trust, and then discover that only deeds of trust associated with sales by defendants had not been mailed, prompting further inquiries. At this stage of the proceeding, there is no evidence addressing whether receipt of the mailings lulled the lenders or concealed the truth from them. It is sufficient, for the purposes of a motion to dismiss, that these theories are legally cognizable and the Government may present evidence from

which a reasonable jury might conclude that the mailings furthered the scheme in this manner.

 However, the mailings to the buyers are different. Here, the Government seeks a novel application of the lulling theory. In general, mailings further a scheme under a lulling theory when they lull the victims of the scheme. *U.S. v. Strong,* 371 F.3d 225, 231 (5th Cir.2004). The Government stated at the December 22, 2006 hearing that the victims of the scheme alleged here are the lenders and HUD. The Government fails to explain how mailings of warranty deeds to buyers could have lulled lenders or HUD, or how such mailings could have concealed the nature of the scheme from them. The Government asserts, in effect, that mailings that lull third parties to a scheme can nevertheless be "incident to an essential part of a scheme" even when they do not communicate to the victims. Federal mail fraud statutes are not designed to reach all fraud, but only "those limited instances in which the use of the mails is a part of the execution of the fraud." *Kann,* 323 U.S. at 95, 65 S.Ct. 148. The Government's theory, as applied to the buyers, would so broaden the federal mail fraud statutes as to leave no mailing untouched.

The Government cites to the unpublished decision of *U.S. v. Austin,* 70 F.3d 1282, 1992 WL 738548 (10th Cir.1992) to defend its application of the lulling theory to the buyers. But in *Austin,* the mailings in dispute were mailings of warranty deeds *to* county clerks and recorders, and to an escrow company after recording. *Id.* at *3. The court noted that "without delivery and recording of the deeds" the mortgage company and the title company would have become suspicious. *Id. Austin* also addressed mailings from the county clerk and recorder to a mortgage company complicit in the scheme, but the Court pointed out that receipt of these deeds was required by the mortgage company's loan purchase agreement with secondary lenders, rendering these mailings "a step without which the ultimate scheme could not have been accomplished." *Id.* No such agreement exists here, and *Austin* does not support the Government's claim that mailings to non-victim buyers are within the scope of § 1341 under a lulling theory.

 The parties also dispute the appropriate standard governing the defendants' intent to use the mails. Defendants cite *Schmuck* for a subjective standard: "The relevant question at all times is whether the mailing is part of the execution of the scheme as conceived by the perpetrator at the time, regardless of whether the mailing later, through hindsight, may prove to have been counterproductive and return to haunt the perpetrator of the fraud." 489 U.S. at 715, 109 S.Ct. 1443. The Government contends that this statement addresses only whether a mailing comes under the statute even if it is injurious to the scheme, but that it does not revise an earlier, objective standard for use of the mail established in *Pereira v. U.S.,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 98 L.Ed. 435 (1954): "Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used."

It is unclear how important this dispute now. However, for the sake of thoroughness I note that the Tenth Circuit, since *Schmuck,* uses the objective standard established in *Pereira. See U.S. v. Hollis,* 971 F.2d 1441, 1448 (10th Cir.1992). For the purposes of this case, I rely on prevailing Tenth Circuit authority and use the objective test from *Pereira.*

It is so Ordered that:

1) Defendant's Motion to Bar Use of the Additional Properties as Substantive Evidence (Docket #77, Motion for Bill of Particulars) is DENIED, and

2) Defendant's Motion to Dismiss Counts 1–12 (Docket #149) is DENIED, in part and GRANTED, in part, as follows:

a) Defendants' motion is DENIED as to Counts 1, 3, 5, 7, 8, 10, 11 and 12, and

b) Defendants' motion is GRANTED as to Counts 2, 4, 6 and 9, and these counts are DISMISSED.